■ LILLIAN DAVIS, Respondent, v EDWARD J. DAVIS, Appellant.—Judgment, Supreme Court, New York County (John C. Leonforte, J.H.O.), entered May 11, 1990, which, after trial, *inter alia,* dissolved the parties' marriage on grounds of defendant's constructive abandonment of plaintiff; awarded custody of the parties' child to plaintiff; conditioned defendant's right to alternate weekend visitation in New York City and two weeks per summer in Florida upon defendant's payment of all amounts required by the judgment; directed defendant to pay $1,000 per month maintenance and $1,000 per month child support; awarded plaintiff 60% and defendant 40% of the parties' net marital assets, found to amount to $1,683,773.59; directed defendant to convey to plaintiff exclusive title to the parties' marital residence, cooperative apartment 5B at 439 East 51st Street in New York, found to have a net value of $654,000; awarded defendant exclusive title with respect to certain Tennessee property, found to have a value of $380,472.50; effectuated the remainder of the equitable distribution by directing defendant to pay plaintiff $179,210.90 within 10 days of service of the judgment with notice of entry; directed defendant to pay plaintiff $82,458.95 as and for 60%

of the necessaries paid for exclusively by plaintiff; directed defendant to pay plaintiff's attorneys $30,000 and to pay plaintiff $500 and $250 as and for appraisal and accountant's fees, respectively, unanimously modified on the law and the facts and in the exercise of discretion, to vacate the provision that visitation rights are conditioned upon defendant's payment of all monetary amounts required by the judgment, reduce the amount defendant is directed to pay plaintiff's attorneys and the amount of that separate money judgment to be entered to $15,000, and the judgment is otherwise affirmed, without costs.

The parties were married in August 1966, when they were both in their 20's and each earning approximately $5,000. Plaintiff was employed as a mathematics teacher at a private school between 1966 and 1977, and attained a related Master's degree during that time. Defendant was initially employed at an insurance agency owned by his father, the Davis Agency, and in 1968, became sole shareholder of Business Systems Inc. (hereinafter referred to as "BSI"), a firm providing computer services for insurance clients referred by the Davis Agency. In 1973, the parties purchased a four-bedroom, three-bath cooperative apartment for $62,000, giving a $45,000 mortgage. The parties' only child was born in September 1974. Plaintiff began working for BSI part-time in 1977 and full-time in 1980. When BSI's other employees departed in 1981, defendant announced his desire to close the business, but plaintiff assumed the responsibilities of the departed employees and was instrumental in keeping the business going. After a three week hospitalization in November 1983 for observation of his possible multiple sclerosis condition, defendant announced his intent to let the business die and leave New York. Plaintiff assumed the full responsibility of running the business and, it was found after trial, defendant affirmatively sought to frustrate that effort by attempting to dissuade clients from utilizing the services of BSI. Thereafter, defendant provided no support to plaintiff or the child, although the parties did sell certain Pennsylvania property in 1984 and plaintiff retained $138,053 of the $48,053 net proceeds. It appears that, in large part, plaintiff met her expenses and those of the child over the next four years, up until the time of trial, from these funds.

This action for divorce and equitable distribution was commenced in February 1985. Defendant never served an answer. In October 1985, he left the marital residence and moved to Florida, where he has since resided in an apartment owned by his father, who also in that year moved to Florida and sold

the Davis Agency to a third party. Plaintiff and the parties' child have continued to reside in the parties' coop apartment, while the business of BSI had dwindled to one client, the Davis Agency. At the time of trial, BSI received approximately $5,000 per month from this client, with which it shared office space, such that BSI has very little overhead.

Before referring this action to a Judicial Hearing Officer to hear and determine, Justice Ciparick issued a conditional preclusion order barring defendant from presenting any evidence at trial as to the parties' financial status unless he appeared for an examination before trial by a date certain, produced documents demanded by plaintiff and filed an updated net worth statement. It appears defendant complied with this order, as he was deposed and filed an updated net worth statement. Plaintiff made no further motion to preclude his testimony until the midst of trial; and defendant was permitted to testify at trial on the subject of the parties' finances. At trial, defendant testified that he had not been gainfully employed in Florida as he was disabled as a result of multiple sclerosis and had been living on disability payments under two insurance policies and from the Social Security Administration. The latter element was apparently supported by the fact that the parties' daughter also received monthly Social Security payments as a result of her father's disability. However, defendant failed to support his testimony with any medical testimony or financial documentation; instead, he stated he left all financial documentation in his custody in his Florida residence. There was also evidence at trial that defendant had, for several months, prior to the trial, deposited $750 per month dividends from a marital asset into the account of his mother, and had earlier written BSI checks in an aggregate amount of $40,000 to a friend who had not provided any benefit to the corporation.

The Judicial Hearing Officer found defendant should be precluded from testifying at trial due to his failure and/or refusal to provide financial documentation. Alternatively, it was found no consideration or weight should be given to defendant's testimony due to his secretion and dissipation of marital assets; his failure to support his claim of disability with medical testimony, as might reasonably be expected; and his active lifestyle, which continued to include driving an automobile, frequent air travel, swimming, walking and exercising. Based upon defendant's economic fault, the marital estate was divided 60% to plaintiff and 40% to defendant. As plaintiff and the parties' child continued to reside in the

marital residence, as a sale of that asset would likely cause liability for approximately $230,000 in capital gains tax, and as there were sufficient other liquid assets in the marital estate to achieve the contemplated equitable distribution, plaintiff's share was to include exclusive title to the cooperative apartment. Defendant was awarded exclusive title to certain property in Tennessee and the balance of the equitable distribution scheme was to be accomplished by defendant's payment of a lump sum to plaintiff. Maintenance to plaintiff was awarded upon the finding that defendant had chosen not to be gainfully employed and that plaintiff earned $24,000 in 1988, as opposed to defendant's income of $60,000. Plaintiff was also awarded $30,000 counsel fees, $500 for appraisal fees and $250 for accountant's fees on the basis of defendant's obstructionist and dilatory tactics and conduct seeking to secrete and remove assets from the jurisdiction, which frustrated the judicial effort to achieve equitable distribution.

We need express no view as to the propriety of the "preclusion" order, as it is clear that this disposition had no greater effect than the Judicial Hearing Officer's rejection of the credibility of defendant's trial testimony, which we decline to disturb (Cataudella v Cataudella, 74 AD2d 893). The 60%-40% equitable distribution in favor of plaintiff was firmly supported by evidence of defendant's dissipation of marital assets, including efforts at diminishing the value of BSI and transfers of funds without fair consideration to third parties (Domestic Relations Law § 236 [B] [5] [d] [11], [12]), as well as the duration of the marriage and plaintiff's consistent economic and non-economic contributions to the marriage. The court's award to plaintiff of exclusive title to the former marital residence was proper, in light of the fact that such disposition was made within the context of the 60%-40% division of the marital estate, there being sufficient other liquid assets to effectuate such division without any forced sale and that it was made with due consideration to the need of plaintiff, as custodial parent, to occupy the marital residence and the likely tax consequences of any forced sale thereof (Domestic Relations Law § 236 [B] [5] [d] [3], [10]). We do not disturb the award of permanent maintenance to plaintiff as defendant failed to meet his burden of establishing that he was incapable of being gainfully employed in an occupation similar to that which he had engaged in in New York. There was evidence, therefore, that defendant's earning ability was significantly greater than plaintiff's (see, Erdheim v Erdheim, 119 AD2d 623).

In the circumstances of this case, particularly the equitable distribution of assets, we are unable to sustain the award against defendant of the entire amount of plaintiff's attorneys' fees. (Domestic Relations Law § 237 [a].) Such award against defendant should be reduced to $15,000 (see, *O'Brien v O'Brien*, 66 NY2d 576, 590; *DeCabrera v Cabrera-Rosete*, 70 NY2d 879). Finally, given that defendant's visitation rights with the parties' child were promulgated with a view to the child's best interests, it was improper to condition those rights upon defendant's compliance with the monetary obligations of the judgment (see, *Farhi v Farhi*, 64 AD2d 840; *Engrassia v Di Lullo*, 89 AD2d 957). We have reviewed defendant's other contentions and find them to be without merit. Concur—Murphy, P. J., Milonas, Ross and Rubin, JJ.