1990

Dorothy R. ROE, Appellant v. Woodford V. ROE, Respondent.

(429 S.E. (2d) 830)

Court of Appeals

*John L. Creson,* Augusta, GA, *for appellant.*

*Vicki J. Snelgrove,* Aiken, *for respondent.*

Heard Feb. 16, 1993.

Decided April 12, 1993.

CURETON, Judge:

The court granted the wife a divorce on the statutory ground of adultery. The wife appeals, *inter alia,* the trial court's division of marital property and its valuation of various items of marital property. We affirm in part, reverse in part, and remand.

The parties married in December 1953 and separated in December 1988. The wife filed for divorce on August 31, 1989. She was 56 years old at the time of the hearing; the husband was 58.

The wife operated a bookkeeping service for a number of years. In 1978, the wife began to do accounting work for several Little Caesar pizza franchises. By the late 1980's, she had 16 accounts. Prior to his retirement in 1988, the husband worked as a construction and maintenance supervisor at a bank in Michigan.

In 1987, the parties entered a partnership with Ernest Rouse to develop a Little Caesar franchise in Sumter. In May 1987, the wife incorporated "Roe and Roe Pizza Treats" (R & R Pizza) to operate the franchise; she became the sole shareholder.

In February 1988, Rouse borrowed $15,000 from the wife. The parties dispute whether this debt is owed to the wife or to R & R Pizza. By December 1988, R & R Pizza had acquired and was operating franchises in Sumter, Aiken, and Orangeburg. The parties funded the franchise fees, leasehold improvements, and other business expenses with money the wife had inherited, their savings, and a credit-line secured by the parties' home in Michigan. Following the parties' separation in December 1988, the husband was not involved in the operation of R & R Pizza or its franchises.

Subsequent to the parties' separation but prior to their divorce, the husband received a distribution of retirement benefits from his former employer of $170,000, which he divided equally with his wife. The wife used $35,000 of her share of the distribution as well as an additional $15,000 which she borrowed from the husband to purchase a house in Orangeburg; she used the remainder to operate R & R Pizza. The wife removed an additional $5,500 in funds from the husband's account to pay attorney and investigator fees; the parties dispute whether the wife had permission to remove these funds. The husband used $14,000 of his share of the retirement funds to buy a new vehicle and placed the remainder ($49,000) in a savings account.

The trial judge awarded to the wife as marital property: 1) a note for $160,353 given by R & R Pizza to the wife; 2) R & R Pizza, with a negative value of $173,000; 3) R & R Pizza's

stock; 4) Rouse's debt of $15,000; 5) a credit line used to finance R & R Pizza, with a balance owing of $94,000; 6) a home in Michigan valued at $60,000; 7) her life insurance policy valued at $14,000; 8) R & R Pizza's furniture and office equipment valued at $10,000; 9) jewelry valued at $15,000; 10) a home in Orangeburg valued at $48,500; 11) her car valued at $2,000; and 12) her checking account of $744.

He awarded the husband as marital property: 1) a lot in Michigan valued at $5,000; 2) his IRA of $15,000; 3) tools valued at $10,000; 4) his vehicle valued at $12,000; 5) his life insurance policy valued at $14,000; 6) $5,000 in stock; 7) a collection of toy trains valued at $7,000; and 8) his savings account of $49,000.

Of the $190,597 identified by the trial judge as marital property, he awarded $117,000 or 61%, to the husband and $73,597, or 39%, to the wife. He found that the wife was primarily responsible for the parties' involvement in R & R Pizza, that the parties had been in a comfortable financial situation prior to this involvement, and that she had "continued to sink money in that hole" both before and after the separation. He stated he had considered the misconduct of the wife as it affected the economic circumstances of the parties in accordance with S.C. Code Ann. § 20-7-472(2), and that the wife was guilty of economic misconduct both before and after the separation. He also observed that the wife had both misrepresented and failed to disclose to the court which marital assets she had invested in R & R Pizza subsequent to the parties' separation.

The trial judge observed that although the equitable division did not restore the husband to his financial condition prior to the parties' involvement in R & R Pizza, he was not entirely without fault in regards to this venture.

He also found that the wife owed the husband $20,500 because the parties had agreed to equally divide the husband's retirement benefits, and that the wife would pay the husband ½ of the husband's tax liability on these retirement benefits once its exact amount was determined.[1]

On appeal, the wife asserts that the trial court erred in 1) "double counting" certain marital assets which she was

---

[1] This debt of $20,500 and the associated tax liability are not reflected in the division of marital property.

awarded because these assets were also considered in the valuation of R & R Pizza; 2) valuing and distributing as marital property jewelry inherited by the wife; 3) valuing the furniture and office equipment awarded to the wife; 4) requiring the wife to repay $20,500 to the husband; 5) valuing and awarding to the husband as marital property the collection of toy trains; 6) requiring the wife to be responsible for ½ of the tax liability on the husband's retirement funds; and 7) awarding the majority of the marital assets of the parties to the husband in its equitable division.

## I.

As pertains to the "double counting" claim, the wife asserts that because she was awarded R & R Pizza, the trial court erred by awarding her the $15,000 debt owed by Rouse as a separate item of marital property, where the amount of this debt had been used by her appraiser as an account receivable in calculating the negative value of R & R Pizza. We agree. There is no dispute that both the debt and R & R Pizza were marital property. Although the evidence and testimony conflict as to whether this debt was payable to R & R Pizza, and accordingly was a corporate asset, or was payable to the wife personally, it is unnecessary for us to resolve this conflict because we are convinced the appraiser relied upon this debt in his calculation of R & R Pizza's net value. Accordingly, the trial court erred in awarding the debt as a marital asset when the net value of R & R Pizza had been increased by its value. *Brandi v. Brandi*, 302 S.C. 353, 359 n. 2, (Ct. App. 1990) (it was error for the trial court to include as marital assets both the value of land owned by the husband's corporation and the value of his stock in the same corporation).

The wife also asserts that the trial court erred by awarding her the Orangeburg home and valuing it at $48,500 without either reducing its equity by the $15,000 which she had borrowed from the husband for its downpayment, or absolving her of the requirement to repay the husband. We agree. Although we affirm the trial court's finding that the wife must honor her agreement to repay the money which she borrowed from the husband, it was error to order repayment without reducing the value of the Orange-

burg home by $15,000. *Id.* We find that the home's proper value was $33,500.

Next, the wife asserts that the trial court erred in ■ valuing the R & R Pizza's stock at $15,000, because the stock has no value considering the negative value of R & R Pizza. We disagree. There is no dispute that both R & R Pizza and its stock were marital property. Regardless of the value of this stock,[2] our review of the record establishes that the wife's appraiser determined it was a corporate liability in valuing R & R Pizza, and decreased the net value of R & R Pizza by the $15,000 book value assigned to it.[3] We see no prejudice in the award. *See Cumbie v. Cumbie,* 245 S.C. 107, 117, 139 S.E. (2d) 477, 482 (1964) (appellant must show both error and prejudice).

The wife also asserts the trial court erred by awarding ■ her the note given by R & R Pizza to her in the sum of $160,353. She reasons that although she might forgive this note, the corporation would still have a negative value of approximately $12,000. Again, we find no error where this note was considered by her appraiser in arriving at the net value of the corporation. *Id.*

## II.

The wife asserts the trial court erred in valuing jewelry at $15,000 and distributing it to her as marital property, as well as in valuing furniture and office equipment used by her bookkeeping service at $10,000.

Although the wife does not dispute that she acquired ■ the jewelry during the marriage, she asserts that the jewelry was her separate property and not subject to equitable distribution. S.C Code Ann. § 20-7-473(1) (1976) as amended. Our review of the record establishes that despite her testimony that she had inherited most of her jewelry from her mother in 1982, she only identified one item, an emerald

---

[2] The parties' personal financial statement of April 17, 1988 values the stock at $15,000.

[3] The wife's appraiser considered corporate tax returns and records in his valuation of R & R Pizza. The 1989 corporate tax return identifies this $15,000 in stock as a liability. The net value of R & R Pizza would be increased to negative $158,000 if this stock had not been considered a liability. The court accepted the wife's expert appraiser's valuation of this asset.

ring appraised at $3,795, as inherited. The husband testified that he was uncertain which jewelry the wife had inherited. It is undisputed that the parties purchased some of the jewelry during the marriage. The party who claim that property is not marital has the burden to establish an exemption under S.C. Code Ann § 20-7-473. *Roberts v. Roberts*, 296 S.C. 93, 95, 370 S.E. (2d) 881, 882 (Ct. App. 1988), *aff'd* as *modified*, 299 S.C. 315, 319, 384 S.E. (2d) 719, 722 (1989). We conclude that except for the emerald ring, the wife did not establish that the jewelry was her separate property. However, because her testimony that she inherited the ring was uncontradicted, the trial court erred in distributing it as marital property.

During the marriage, the parties insured the jewelry for $15,299. Although the wife's financial declaration neither valued nor identified the jewelry as marital property or as the property of either party, the husband's declaration valued it at $14,000. The trial court's valuation is otherwise supported by evidence of the jewelry's insured value, except that this valuation included the emerald ring. Accordingly, we deduct from the trial court's valuation the sum of $3,795, the only current valuation given the emerald ring the record, and find the value of the jewelry awarded the wife to be $11,205.

The trial court valued the bookkeeping service's furniture and office equipment at $10,000. This furniture and office equipment includes several computers, a typewriter, file cabinets, and a desk. The wife filed a financial statement with the parties' Michigan Bank in March 1988 that valued the business computers at $30,000. The wife's financial declaration of March 1990 assigns a "nominal" value to the assets of the business. The wife testified that subsequent to the parties' separation, she spent $5,453 to purchase a new computer and $1,824 to repair another computer, and that the other computers had some value despite their age. The husband's financial declaration of March 1990 valued the assets of the bookkeeping service at $5,000. We observe that two of the computers mentioned above account for $7,300 of the $10,000 valuation of all property of the business, and that the trial court could reasonably conclude that the furniture and the remaining computers had a value of $2,700 dollars.

The trial court is given broad discretion in valuing marital property. Because this valuation was supported by the evidence, particularly the 1988 valuation of the service's computers, we find no abuse of discretion. *Smith v. Smith,* 294 S.C. 194, 199, 363 S.E (2d) 404, 407 (Ct. App. 1987).

## III.

The wife argues that the trial court erred by requiring her to repay the husband $15,000 which she had borrowed from him to use as a downpayment on the Orangeburg home, and $5,500 which she withdrew form his account to pay her attorney and investigator fee. She relies on S.C. Code Ann. § 20-7-473 and *Panhorst v. Panhorst,* 301 S.C. 100, 390 S.E. (2d) 376 (Ct. App. 1990), for the proposition that the parties may not litigate expenditures or transfers of property made prior to the filing of the divorce action because the marital estate is identified at the date of filing.

At trial, the wife testified that after the parties' separation but prior to filing the divorce action, they agreed to an equal division of the husband's retirement funds, each receiving $85,000. She stated that she considered this division to be a settlement of her claim to these funds and in her complaint acknowledged that the parties had previously made an informal division of some of the assets of the marriage. She also testified that she borrowed an additional $15,000 from her husband, which she had agreed to repay, and that, immediately prior to filing this action, she took an additional $5,500 from his account to pay her attorney and investigator fees.

We do not interpret § 20-7-473 and *Panhorst* as preventing the trial court from ordering the wife to repay the $15,000 borrowed from the husband prior to her filing for divorce. In *Panhorst,* the wife argued that money given by the husband to his mother, a third party, should be included in the marital estate and subject to equitable distribution. This court disagreed, stating that "the money . . . was not marital property because, at the time the action was filed, it no longer belonged to either [party] as the statute requires." In contrast, the wife retains the investment the $15,000 bought as equity in the Orangeburg home; she does not dispute that this house is marital

property. We conclude that the wife's reliance on *Panhorst* is misplaced.

Our review of the record establishes that the wife withdrew the $5,500 from the husband's account on August 31, 1989, or the day she filed her complaint. We do not interpret § 20-7-473 as denying the trial court authority to order the wife to reimburse the husband. We find no error. *Cf. Miller v. Miller*, 293 S.C. 69, 72, 358 S.E. (2d) 710, 712 (1987) (father ordered to repay minor children money borrowed during the marriage).[4]

## IV.

The wife next asserts that the trial court erred by awarding the collection of toy trains to the husband because the collection was their minor child's property, and that the trial court's valuation of this collection at $7,000 was without foundation. The parties disagreed as to whether the train collection was marital property. Although this court may find facts in accordance with its own view of the preponderance of the evidence, we are not required to disregard the findings of the trial judge, who saw and heard the witnesses and was in a better position to evaluate their testimony. *Hartley v. Hartley*, 292 S.C. 245, 355 S.E (2d) 869, 870 (Ct. App. 1987). Although the husband valued the collection in his financial declaration at $7,000, the wife offered no evidence as to value. A party may not complain to this court that the trial court's valuation is unsupported by the evidence without offering proof of value at trial. *Cox v. Cox*, 290 S.C. 245, 248, 349 S.E. (2d) 92, 93 (Ct. App. 1986). We affirm the trial judge's finding that the train collection was marital property and that its value was $7,000.

## V.

The wife argues that the trial court erred by requiring the wife to pay the husband one-half of the tax liability associated with the early withdrawal of his retirement

---

[4] Additionally, the wife does not appeal the trial court's order that the parties pay their own attorney fees; absolving her of the requirement to repay the $5,500 would be tantamount to awarding her attorney fees although she has not alleged error in regards to the denial of fees. Equity regards substance rather than form. *Wilkie v. Philadelphia Life Ins. Co.*, 187 S.C. 382, 388, 197 S.E. 375, 378 (1938).

funds once the husband had determined the amount of this liability. Because there was no evidence at trial as to amount of this liability, although presumably it is substantial, and because of the husband's possible failure to pay estimated tax, to file extensions, or to take other actions, she asserts there are penalties and interest that she could have avoided if the trial court had determined the amount of the tax and reduced the marital estate available for division, or if it had awarded each of the parties the funds they had previously divided and directed that each be liable for taxes on one-half of these funds. The husband argues that because the parties agreed to share the husband's retirement funds, which the wife acknowledged at trial, without benefit of legal or tax advice, they should share the entire tax liability.

At oral argument, the husband's counsel was unable to state the exact amount of this liability. He acknowledge that the IRS now holds liens on the husband's property. The husband remains responsible to the IRS for payment of the entire amount of tax, penalty, and interest.

We affirm the trial court's finding that the parties should equally share the tax liability on the husband's retirement, and that the wife should pay the husband one-half the amount of the tax. S.C. Code Ann. § 20-7-472(11) (1976) as amended; *Graham v. Graham*, 301 S.C. 128, 131, 390 S.E. (2d) 469, 471 (Ct. App. 1990). We remand this issue to the trial court for a determination of the sum the wife owes excluding penalties and assessments the husband could have avoided by the timely payment of the taxes.

## VI.

The wife argues the trial court erred by awarding the husband a disproportionate share of the marital estate.

She contends that although the testimony conflicts as to each parties' relative contribution to the marital estate, it is undisputed that she contributed at least 25% of its value during the 36-year marriage, and, regardless, she was the primary caretaker of their three children. Additionally, she argues that although the decision to enter the pizza business was made jointly by the parties, the trial court abused its discretion by punishing her for misconduct. She asserts it erred by awarding her a disproportionate amount of marital debts,

less than 40% of the marital estate, and by awarding the husband most of the "hard" assets, or those with definable values. *See Donahue v. Donahue,* 299 S.C. 353, 384 S.E. (2d) 741 (1989). We disagree.

Through her business associations, the wife involved the parties in the pizza franchise business. She became the sole shareholder. She maintained all correspondence with the parent corporation, acquired the additional franchises, and spent marital funds to pay the expenses of these franchises both before and after separation. The record establishes that she routinely acted without consulting the husband. She has failed to account for marital funds which she spent to acquire and operate these franchises.[5] The wife testified that the husband's involvement in the franchises was insignificant relative to her own.

The wife asserts that the husband received only assets with a definable value, in contrast to the assets awarded the wife. Excepting his share of the retirement funds retained in savings, the husband received $68,000. Under our findings, the wife receives in excess of $61,000 in assets with a definable value, including two homes.[6] This assertion is without merit.

In suggesting that the wife's investments in the pizza business were reasonable, her appraiser testified that significant losses are normal for this type of business during the first several years of operation. The proper focus of our inquiry is the parties' conduct as it has affected the value of the marital estate. S.C. Code Ann. § 20-7-472(2) (1976) as amended. It is undisputed that the expenses associated with the acquisition of R & R Pizza's assets and with its operation have significantly diminished the marital assets which were available to the parties prior to their involvement with R & R Pizza. We conclude that the preponderance of the evidence establishes that the wife's conduct significantly reduced the value of the marital estate. Accordingly, we affirm the trial court's finding

---

[5] The trial judge found that 1) the wife was untruthful when she testified that she had used her separate property, an IRA, to pay one of the franchise fees; 2) the wife paid the other two franchise fees using marital property; 3) the wife failed to account for $11,000 she took from the parties joint account in January 1989; and 4) the wife could account for only $48,500 of the $105,000 in retirement money she received from the husband.

[6] This $61,000 does not include the Michigan home.

that the wife was guilty of misconduct affecting the "economic circumstances of the "marriage."

## VII.

In summary, we have found that the trial court erred in awarding Rouse's debt of $15,000 as marital property to the wife, by not reducing the value of the Orangeburg home by the $15,000 which the wife agreed to repay the husband, and by mistakenly considering her emerald ring to be marital property. We affirm the distribution of each item of marital property as made by the trial judge. We hold, however, that in view of our modification of the value of the assets awarded the wife, she should be relieved of the requirement to repay the husband the $20,500 she borrowed from him.[7] We remand the issue of the tax liability for determination as noted above. Although this division results in the husband receiving $117,000 or 75%, and the wife $39,802 or 25%, of a $156,802 marital estate, the wife should, under the circumstances of this case, be responsible for the large debts that reduced the marital estate. Accordingly, the judgment of the trial court is

Affirmed in part, reversed in part, and remanded.

GOOLSBY, J., and LITTLEJOHN, Acting Judge, concur.

---

[7] We make this modification partly in the interest of ending the controversy between the parties. *Cf. Johnson V. Johnson*, 285 S.C. 308, 311, 329 S.E. (2d) 443, 445 (1985) (the family court should attempt to sever all entangling legal relationships and to place the parties in a position to begin anew). Additionally, we consider the $49,000 of retirement benefits retained by the husband in savings to be equitably his separate property. The wife used $6,000 of her share of these benefits to purchase jewelry. She spent $35,000 toward the purchase of the Orangeburg home. She cannot account for the remainder. Although the husband does not appeal, he alleged in his brief and at oral argument that the wife held $28,000 in an account that was not considered in the equitable division. If this $49,000 were excluded from the marital estate, the husband would receive $68,000, or 6.3%, and the wife $39,802, or 37%, of the $107,802 marital estate.