Jeanne **SIEN**, Appellant/Counter–Appellee,

v.

Ray **SIEN**, Appellee/Counter–Appellant.

No. 82331.

Court of Appeals of Oklahoma, Division No. 1.

Nov. 15, 1994.

Rehearing Denied Dec. 20, 1994.

As Corrected Feb. 24, 1995.

C. Michael Zacharias, Tulsa, for appellant/counter-appellee.

Don E. Williams, David A. Tracy, Tulsa, for appellee/counter-appellant.

## MEMORANDUM OPINION

HANSEN, Presiding Judge:

In this divorce action, the parties (hereafter, Husband and/or Wife) each seek review of the trial court's *Decree of Divorce*. Husband and Wife were married in 1955 and have three adult children. They separated in July 1987, and remained apart except for a short period in August 1987, when Husband was convalescing. Wife filed her *Petition* in August 1991, to initiate the action. Trial was held in November 1992.

The trial court entered its findings of fact and conclusions of law on January 14, 1993, and ordered Husband's counsel to prepare a Decree of Divorce in accordance with the findings therein. Wife filed a *Motion for New Trial* on January 22, 1993. Husband responded to Wife's motion and concurrently filed his *Motion to Reconsider*.

After hearing argument on the respective motions, the trial court denied both motions, except it vacated that part of its order directing Husband and Wife to pay their own attorney fees. The *Decree of Divorce* was then filed. After each had made application for attorney fees, the trial court reaffirmed its order in the *Decree of Divorce* that Husband and Wife pay their own fees and costs. Appeal is from the Decree of Divorce and the order on attorney fees.

## HUSBAND'S MOTION TO DISMISS WIFE'S APPEAL

As a prefatory matter, in his Response Brief, Husband reasserts his motion to dismiss Wife's appeal, which he initially asserted in his response to Wife's *Petition in Error*. The basis for the motion to dismiss is that Wife was precluded from contesting the judgment on appeal because she had accepted the benefits of the judgment.

The Supreme Court expressly rejected that argument when it denied Husband's motion to dismiss during appellate pleading. The denial was without reservation. Husband had full opportunity to present the Supreme Court with whatever information he deemed necessary to support his contentions. We are bound by the Supreme Court's determination. *Wimberly v. Buford*, 660 P.2d 1050 (Okla.1983).

## STANDARD OF REVIEW

 Wife's first four propositions, and Husband's propositions on counter-appeal, challenge the trial court's valuation, calculation and division of the marital estate. A divorce action is one of equitable cognizance in which the trial court has discretionary power to divide the marital estate. *Teel v. Teel*, 766 P.2d 994 (Okla.1988). We will not disturb that division unless we find an abuse of discretion, or that the trial court determination is clearly contrary to the weight of the evidence. *Teel v. Teel*, at 998. The burden of showing an abuse of discretion in determining the rights to marital property is on the party complaining. *Lincoln v. Lincoln*, 840 P.2d 41 (Okla.App.1992).

## VALUATION OF THE MARITAL ESTATE

 There is no statutory mandate specifically dictating how or when the marital estate is to be valued. Generally, with respect to property *jointly acquired* during marriage, whether real or personal, and whether titled in one or both names, 43 O.S.1991 § 121 provides the trial court:

> ... shall make such division between the parties as may appear just and reasonable,[1] by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to be paid such sum as may be just and proper to effect a fair and just division thereof.[2]

Jointly acquired property within the meaning of § 121 is that which is accumulated by the *joint industry* of both spouses during the marriage. *Templeton v. Templeton*, 656 P.2d 250 (Okla.1982). There is a rebuttable presumption that property acquired during the marriage is obtained through the joint efforts of husband and wife. *Manhart v. Manhart*, 725 P.2d 1234 (Okla.1986).

██ While § 121 makes no express reference to division of jointly acquired *debts*, such authority is implicit in the trial court because our caselaw requires the court to make its property division based upon the *net worth* of the marital estate, that is, marital estate assets minus marital debts. *Teel v. Teel*, 766 P.2d at 997.

## REQUIREMENT FOR CONSISTENCY IN VALUATION DATES FOR BOTH MARITAL ASSETS AND DEBTS

Wife alleges the trial court divided the marital estate unfairly by utilizing inconsistent valuation dates for assets and liabilities. The unfairness asserted is that the trial court valued certain marital estate assets as of the date of separation, but placed post-separation values on marital debts. Wife argues that if *property* acquired after the date of separation is the separate property of the spouse acquiring it, the same rule should apply to *debt* incurred after separation.

---

1. "Just and reasonable" are equivalent to *equitable*, though not synonymous with *equal*. *Teel v. Teel*, 766 P.2d 994, 997 (Okla.1988) (footnote 6).

2. *Separate* property is set aside to each spouse and does not become part of the marital estate. See, 12 O.S.1991 § 121.

On one side of Wife's alleged unfairness equation are two of the marital estate assets awarded to Husband—Husband's 401(k) plan valued at $11,352.00, and the family farm valued at $175,000.00—and on the other side are debts charged to Husband—the "Kay Lewis" debt at $176,927.00 and the American Bank debt at $39,683.00.[3]

## A. ASSETS

As propounded by Husband, the trial court specifically found "that joint accumulations of the parties to this action ceased to occur on or about the date of their separation, namely, on or about July 1, 1987". More particularly, the court chose the *date of separation* value for the 401(k) plan from among several alternative values stipulated.[4]

We agree with the trial court's conclusion that the evidence established joint industry ended when Husband and Wife separated on June 30, 1987. The trial court further made a number of specific evidentiary findings to support that conclusion. We will not repeat those findings, but they show, as noted by the trial court, that after June 30, 1987, "the parties conducted their lives separately, both personally and financially". Wife's activities after that time did not significantly affect the marital estate.

The Court of Appeals determined in *Ford v. Ford*, 840 P.2d 36 (Okla.App.1992), that increases in a 401(k) plan after joint industry ceased were the separate property of the party making the contributions. The Court in *Ford*, however, did not consider whether *non-contributory* increases in the 401(k) after joint industry ends should be within the marital estate.

■ The trial court here found the increase in Husband's 401(k) after June 30, 1987, was "attributable to contributions by [Husband] from his separate earnings and employer matching contributions". While that is true for most of the increase, the evidence clearly shows interest earnings on the June 30, 1987, 401(k) balance up to the last stipulated value in June 1992. That part of the increase in the 1987 balance due entirely to interest income was effectively a continuation of joint industry until the property was divided. The trial court erred in not adjusting the 1987 stipulated value for interest income, and on remand is directed to include that interest income in the martial estate.

■ The value of the farm was stipulated from an expert appraisal dated April 20, 1992. Husband and Wife stipulated to the value of the family farm, and, with a few exceptions not relevant here, to the value or disposition of the remainder of the marital assets. Because the value of the family farm was not contested at trial, the court had no duty to look beyond those stipulations as they generally are binding and conclusive on the parties. *Bonner v. Oklahoma Rock Corporation*, 863 P.2d 1176, 1181 (Okla.1993) (footnote 15).

## B. DEBTS

■ There were no stipulations relating to the two debts. The trial court was left to determine if the debts were marital obligations, and what value to assign the debts in property division. A marital debt is one which is jointly acquired in furtherance of a marital goal. *Whitley v. Whitley*, 757 P.2d 849 (Okl.App.1988).

### FAILURE TO PROVE AMERICAN BANK DEBT

The record is unclear as to the date of valuation of the American Bank debt, but we

3. The trial court awarded Wife assets it valued at $63,322.00, with no debt, and awarded Husband assets valued at $278,932.00, with Husband charged with the two debts totalling $216,610.00. The trial court also ordered Husband to pay Wife $45,000.00 in property division alimony at $400.00 per month.

4. The other stipulated values for the 401(k) were approximately $37,000.00, "at or about" the date the *Petition* was filed in August 1991; and $44,-699.00, the latest known value at the time of the stipulations on October 12, 1992. That part of the 401(k) in excess of $11,352.00 was set aside as Husband's separate property.

need not further consider Wife's contention regarding valuation of the American Bank debt, because we find merit in her assertion that Husband failed to sufficiently establish it as a marital debt.

In *Teel v. Teel*, 766 P.2d at 998, our Supreme Court restated its holding[5] that a party may rely on a marital debt as an offset in the computation of the marital net estate only if the obligation is identified and clearly supported by the evidence. Husband's proof of the American Bank debt does not meet this burden.

 In his *Financial Declaration*, introduced into evidence to support Husband's proposed property division, Husband makes the conclusional assertion that the American Bank debt is part of the marital estate. Whether an asset or debt is part of the marital estate is a matter for the court, and a matter of proof for the asserting party.

Husband describes the indebtedness in the *Declaration* as "American Bank of Pryor—personal liability on K–Ray note", but does not give the date of the note. K–Ray Limousin Ranch is a partnership between Husband and Kay Lewis, entered into in January 1981, and which continued for at least the ten year term in the partnership agreement.[6] Husband may have become obligated on the note after joint industry ended, and if so, the debt would be his separate obligation.

There is no documentation to establish the debt was incurred as a marital obligation, nor does Husband provide such evidence in his testimony or that of other witnesses. The trial court's specific finding that the American Bank debt was a marital debt is not supported by the evidence and was an abuse of the court's discretion. The trial court erred in including this debt in its calculation of the marital estate and it may not be considered on remand.

**5.** *Also See, Snelling v. Snelling*, 420 P.2d 872 (Okla.1966); *West v. West*, 268 P.2d 250 (Okla. 1954).

**6.** Husband claimed a 50% interest in the partnership, which Husband and Wife stipulated had no value.

## THE KAY LEWIS DEBT

The "Kay Lewis" debt was in the form of an uncontested July 13, 1992, judgment for $95,601.00 taken on a 1982 promissory note signed by Husband, but not Wife. The amount assigned to this debt by the trial court was from Husband's *Financial Declaration*, which reflects the loan amount, with accrued interest, as of October 12, 1992, the date the *Declaration* was filed in the trial court.

The debt derives from a tax free exchange of property in which Husband and Wife jointly received the family farm, with coal mining revenues from their exchanged property intended to retire the joint obligation on the farm. When the coal revenues were insufficient to service the debt, Kay Lewis paid the interest, and eventually paid off the note on the farm.[7]

Husband signed the note to Kay Lewis in April 1982. By its terms the note was payable when the K–Ray partnership made a profit, or by April 1992. Husband did not have Wife sign the note because he "knew from past history that financial matters upset her". Wife testified she was aware of a deficiency in coal revenue, but she thought it was about $33,000.00, and she deferred to Husband, who said he would take care of it.

 We find the Kay Lewis debt was incurred during the marriage, and was in furtherance of the marital goals of establishing a family farm and cattle operation. The trial court properly determined the debt was a marital obligation to be calculated into the property division. Additionally, while the debt is not an actual encumbrance on the farm property, it is sufficiently related to that property to justify the trial court's use of the debt as an off-set against award of the farm to Husband. See, *Teel v. Teel*, 766 P.2d at 998.

**7.** The K–Ray cattle partnership operated on the family farm, so Kay Lewis had a business interest to protect.

The question then turns to what value to place on the debt in determining the net marital estate. As with Husband's 401(k), which is a marital *asset* continuing to accrue interest jointly even after joint industry otherwise ended, the Kay Lewis debt continued to accrue interest jointly on the marital *obligation*. Similarly, interest on this marital obligation is effectively a continuation of joint industry, and is not a debt *acquired* after joint industry ends so as to be characterized as a separate debt. The trial court did not err in assigning the post-separation value, and including interest accrued after joint industry ended.

### CREDIT TO WIFE FOR HUSBAND'S GRATUITOUS CONTRIBUTIONS TO K–RAY PARTNERSHIP

 Wife asks us to reallocate the debt equitably because of Husband's control of marital financial matters and his actions in relation to marital assets and debts. We could do so "in keeping with the simplest notions of fundamental fairness" to both Husband and Wife. *Teel v. Teel,* 766 P.2d at 999.

Wife contends she should be given credit in the property division either against $95,-756.00 Husband contributed to the K–Ray partnership from 1982 to 1990, or against the $176,927.00 value assigned to the debt and deducted from the assets awarded to Husband. Wife argues the contributions were gratuitous because Husband had no obligation under the partnership agreement to make capital contributions, and that she should not be penalized for Husband's "blatantly poor business judgment" in continuing to put money into an enterprise which continually lost money.

The 1982 note given to Kay Lewis, even though it did not arise directly from the partnership arrangement, expressly contemplated that it would be paid from K–Ray partnership profits, or, if none, at the end of a ten year term. The partnership struggled and no profits eventuated to pay the note. In the meantime, Kay Lewis contributed approximately $1,200,000.00 to the partnership in the period Husband was making his contributions.

The partnership agreement provided Kay Lewis was to make an initial contribution of $15,000.00 and be "responsible for the day-to-day cash needs of the business". Husband was essentially to provide labor, lease his land and manage the ranch operations. Nevertheless, we do not find the terms of the agreement are so exclusive as to preclude the need for Husband to make capital contributions to the partnership where necessary to maintain viability of the operation. As the trial court found, such contributions would be "legitimate investments for the intended benefit of the parties".

Kay Lewis filed suit for judgment on the note within a few weeks of the ten year term expiration. Wife does not suggest there was a defense to the action on the note. The judgment remains an outstanding marital obligation.

We find no evidence of fraud or malice on Husband's part, rather he made poor business decisions in an ill-fated enterprise which worked to the financial detriment of the marital estate. Husband's contributions to the partnership do not justify an equitable reallocation.

### *HUSBAND'S COUNTER–APPEAL*
### FAILURE TO PRESERVE ALLEGED ERROR

 In his counter-appeal, Husband first alleges trial court error in awarding Wife an automobile acquired by Husband after separation, without crediting him for debt reduction on the loan. We decline to consider this allegation because Husband failed to raise the issue in his *Motion to Reconsider* before the trial court. 12 O.S. 1991 § 991; Rule 17, Rules for District Courts of Oklahoma, 12 O.S.1991 Ch. 2, App. 1.

When invoking the trial court's reconsideration, a party must afford the court full

opportunity to consider all, not just some, of the errors it allegedly has made, and alleged errors known but not raised are waived. *Spann v. Spann*, 852 P.2d 826 (Okla.App. 1992).

## PROPERTY DIVISION ALIMONY

■ Husband next asserts the trial court erred in inferring "fictional" rent income to him for K–Ray partnership use of the family farm. As the basis for its judgment that Husband pay Wife $45,000.00 in property division alimony, at $400.00 per month, the trial court specifically found:

> Since the K–Ray entity utilized the 174 acre farm for a period of 10 years and only was able to pay rent for one (1) of those years ... this Court finds that [Husband] should pay in the form of property division alimony an amount representing a fair rental for the nine years the property was used without compensation or benefit to [Wife]. Since the 1987 rental was $10,000, that amount should represent a fair and equitable average rental for the remaining nine years. Therefore, [Wife's] share would be one-half (½) of the $90,000 rental, or $45,000.

Wife proposed the imputed farm rental as a marital asset in her pretrial Proposed Findings of Fact and Conclusions of Law, and further proposed she be awarded property division alimony accordingly. The trial court adopted her formulation. The only documentation in the record relating to determination of a fair rental value for the farm are the K–Ray Partnership agreement, the partnership federal income tax returns for the tax years 1987 through 1991, and Husband and Wife's federal joint individual income tax return for 1987.

Each of the *partnership* tax returns shows some rental payments for land, and each shows a net loss. Husband testified the $10,-000.00 rental income shown on the 1987 *joint*

*individual* return was from the K–Ray partnership for use of the farm. There is no evidence the rental payments reflected in the partnership returns for years other than 1987 were for use of the family farm.

The partnership agreement provides Husband's contribution shall be to provide labor "as well as leasing of his [8] facilities and land to the partnership". The agreement further provides "[t]he amount of the lease rentals to be paid to RAY will fluctuate and are to be determined by the income of the partnership".

The lease provisions in the partnership agreement contemplate that part of Husband's contribution to the partnership would be to provide facilities for the ranch operation. It is implicit, although not expressly stated in the agreement, that lease payments for the farm are required to be made under the agreement only if there is partnership income. Husband and his partner expressly agreed the amount of the payments would be proportional to income.

Because the 1987 partnership tax return shows a loss, it is clear the 1987 lease payment was not based on any formula drawn from the partnership agreement. We find no evidence that the payment was agreed by Husband and Kay Lewis to be a fair market rental, nor for that matter, evidence of any calculation used to determine the amount of the actual payments, or to determine what a fair market value might have been for rental of the family farm.

The trial court's use of the only documented rental payment to extrapolate an equitable imputed rental value for each year over a ten year period was unsupported by the evidence, and was an abuse of discretion. The trial court may not consider this imputed fair market rental value as a marital asset on remand.

## WIFE'S APPLICATION FOR ATTORNEY FEES

■ Finally, Wife contends the trial court erred in failing to award her any attorney

---

8. Other parts of the agreement more clearly reflect the facilities and land are the family farm jointly owned by Husband and Wife.

fees. The trial court in its discretion "may require either party to pay such reasonable expenses of the other as may be just and proper under the circumstances". 43 O.S.Supp.1992 § 110(C).

Among the factors the trial court is to consider in determining whether to award "expenses", including attorney fees, is liquidity of the assets available to the parties. *Mocnik v. Mocnik*, 838 P.2d 500, 508 (Okla. 1992). Because we are remanding this matter to the trial court for modification of that part of its judgment dividing the marital estate, we have no proper basis to determine what assets will be available to the parties and therefore the attorney fee award is vacated. Upon application, the trial court is directed to reconsider the attorney fee issue in accordance with 43 O.S.Supp.1992 § 110(C) after it has modified the property division.

Those portions of the trial court's decree of divorce (1) directing Husband and Wife each to pay his or her own attorney fees, and (2) dividing the property of Husband and Wife are REVERSED. This matter is REMANDED to the trial court with instructions to modify the property division in accordance with the determinations and directions set forth herein and to consider any application for attorney fees. In all other respects the trial court's decree of divorce is AFFIRMED.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

JONES, J. and GARRETT, V.C.J., concur.