511 S.E.2d 365

**William G. McDAVID, Jr., Respondent,**

v.

**Mildred T. McDAVID, Petitioner.**

**No. 24882.**

Supreme Court of South Carolina.

Heard Nov. 18, 1998.
Decided Jan. 18, 1999.

John B. Duggan of Mitchell, Bouton, Duggan, Yokel, and Childs, of Greer, for respondent.

J.D. Todd, of Leatherwood, Walker, Todd and Mann, and Kenneth C. Porter, of Porter and Rosenfeld, both of Greenville, for petitioner.

WALLER, Justice:

We granted certiorari to review the Court of Appeals' opinion in *McDavid v. McDavid*, Op. No. 97–UP–277 (S.C.Ct. App. filed April 28, 1997). We affirm in part, reverse in part.

## FACTS

This is a domestic case. Respondent, Husband, was granted a divorce from Petitioner, Wife. In equitably dividing the

couple's property, the family court, *inter alia,* excluded from the value of the marital estate $22,400.00 in assets owned by Wife prior to the marriage. The family court also valued the equity in the marital residence by using the payoff balance owed as of the date of filing of the marital litigation. Finally, the family court subtracted $24,143.50 from the Husband's share of the equitable distribution award, representing funds allegedly misused by Husband during the marriage.

The Court of Appeals reversed. It held Wife's assets had been transmuted into marital property such that their value ($22,400.00) should have been included in the marital estate. The Court of Appeals also held Husband should not have been penalized for the $24,143.00 he used towards his failing business, and that Husband was entitled to an equitable share of the increase in the value of the marital home between the filing of the marital litigation and the time of trial.

## ISSUES

1. Did the Court of Appeals properly hold Wife's premarital assets should have been included in the marital estate?

2. Did the Court of Appeals properly hold the $24,143.50 used towards Husband's business during the marriage should not have been included in the marital estate?

3. Did the Court of Appeals err in holding Husband was entitled to a share of the increase in the value of the marital residence at the time of the trial?

## 1. WIFE'S PREMARITAL PROPERTY

Wife concedes the $22,400 worth of premarital assets she brought into the marriage (a $10,000 lot on which the marital residence was built, a $10,000 down payment on the home, and $2400 Wife had in a savings account) were marital property.[1] She contends, however, that it was proper for the family court

---

[1]. Non-marital property may be transmuted into marital property if it becomes so commingled with marital property as to be untraceable, is titled jointly, or is utilized by parties in support of marriage or in some other manner so as to evidence intent by parties to make it marital property. *Hatfield v. Hatfield,* 327 S.C. 360, 489 S.E.2d 212 (Ct.App. 1997).

to take into consideration the value of these assets in equitably dividing the property.

■ Contrary to Wife's assertion, the family court did not merely "take into consideration" Wife's $22,400 in assets. Rather, the family court specifically held Wife should be given credit for these sums. In doing so, the family court treated the items as non-marital property and excluded them from the value of the estate. This was error. *See* S.C.Code Ann. § 20–7–473 (Supp.1997) ("Marital property" is generally defined as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation....").[2] We affirm the Court of Appeals' holding on this issue.

## 2. HUSBAND'S DISSIPATION OF FUNDS

Husband used $24,143.50 in support of his failing business during the marriage, without Wife's knowledge. The family court held Husband's dissipation of these funds constituted marital misconduct. Accordingly, the court added $24,143.50 to the value of the marital assets, then taxed that amount against Husband's share. The Court of Appeals reversed, finding Husband's use of these funds, even if imprudent, did not constitute "misconduct" warranting a downward adjustment from his share of the marital assets. We agree.

Under S.C.Code Ann. § 20–7–472(2) (Supp.1993), one factor the family court considers in equitably dividing property is "marital misconduct or fault of either or both parties, whether or not used as a basis for a divorce as such, if the misconduct affects or has affected the economic circumstances of the parties, or contributed to the breakup of the marriage."

Very few South Carolina cases have addressed "misconduct" affecting the economic circumstances of the party. In *Peirson v. Calhoun*, 308 S.C. 246, 417 S.E.2d 604 (Ct.App.1992), the Court of Appeals held the husband's drinking was "misconduct" which caused the breakup of the parties' marriage and

---

**2.** Had the parties intended to exclude the value of these items from the marital estate, they could have done so by written agreement. *Johnson v. Johnson*, 296 S.C. 289, 372 S.E.2d 107 (Ct.App.1988); S.C.Code Ann. § 20–7–473(4).

necessarily affected the parties economically inasmuch as the separation resulted in increased utility costs, home maintenance, and general household expenses. Accordingly, the Court of Appeals held the increased living expenses should be attributed to the husband.

Recently, in *Smith v. Smith,* 327 S.C. 448, 486 S.E.2d 516 (Ct.App.1997), the wife was granted a divorce on grounds of adultery. The Court of Appeals held the family court properly considered fault in awarding wife alimony, where the fault affected the economic circumstances of the parties. Although the Court did not specifically address how the Husband's adultery had affected the parties circumstances, there was evidence that Husband had been having an affair for quite some time and that he had secreted assets for years in preparation of leaving Wife.[3]

The most similar case to the one at hand is *Roe v. Roe,* 311 S.C. 471, 429 S.E.2d 830 (Ct.App.1993). In *Roe,* the family court found the wife was guilty of misconduct affecting economic circumstances of marriage due to her investments in a pizza company. Notably, the court in *Roe* found the wife had "continued to sink money in that hole" both before and after the separation, and that wife had both misrepresented and failed to disclose to the court which marital assets she had invested in R & R Pizza subsequent to the parties' separation. 429 S.E.2d at 833. Accordingly, in *Roe* there was evidence the wife had deliberately continued to dissipate marital funds after the parties' separation and had been less than forthright with the family court regarding these funds.

Unlike *Roe,* there is no evidence in the present case that Husband intentionally dissipated funds either during the mar-

---

3.  The family court specifically noted:

    It is clear that from the testimony and the action of [Husband] that he had contemplated separation from [Wife] extensively and in advance of the actual date and, in fact, prepared for same, attempting to better his circumstances. He opened and closed accounts, transferred money, deleted [W]ife's name from accounts and took multiple dramatic steps to prepare himself for the separation. Such actions by [Husband] continued throughout the separation and during the approximate[ly] five years pending the actual trial of this case. [Husband] engineered and took substantial steps to make the tracking of marital assets difficult.
    486 S.E.2d at 521.

riage or immediately after the parties' separation, or that the funds were used for any improper purposes. On the contrary, the only evidence in the record is that Husband used the funds either to support his failing business, or to pay household/family expenses.[4] Moreover, the funds were spent some **two years** prior to the parties' separation.

We are aware of no authority holding "poor business decisions," in and of themselves, justify a downward modification of a party's entitlement to equitable distribution. On the contrary, courts have generally held one spouse chargeable only where he/she acts in bad faith with an intent to deprive the other spouse of marital assets. *See Matti v. Matti*, 647 So.2d 168 (Fla.App.1994) (record suggested paramour and wife depleted parties' assets by trickery or duress); *Re Marriage of Olson*, 223 Ill.App.3d 636, 166 Ill.Dec. 60, 585 N.E.2d 1082 (1992) (husband held to have dissipated assets in paying independent contractor, who also happened to be husband's paramour, for expenses unrelated to business); *Davis v. Davis*, 175 A.D.2d 45, 573 N.Y.S.2d 162 (1991) (husband's efforts to diminish value of business and transfer funds without consideration to third parties supported family court's equitable distribution award in favor of wife); *Hollander v. Hollander*, 89 Md.App. 156, 597 A.2d 1012 (1991) (husband's attempt to transfer practice to daughter was "obvious" attempt to deceive court concerning practice and its valuation).

. However, in cases in which there is no indication of willful misconduct, courts have generally not penalized a spouse for making poor business decisions. *See, Sien v. Sien*, 889 P.2d 1268 (Okla.App.1994) (equitable reallocation of marital debt not warranted by husband's capital contribution to cattle operation where contributions were legitimate investments for the intended benefit of both parties and there was no evidence of fraud or malice on husband's part, even though husband made poor business decisions in ill-fated enterprise which worked to the detriment of the marital estate); *In re Marriage of Isaacs*, 260 Ill.App.3d 423, 198 Ill.Dec. 169, 632 N.E.2d 228 (1994) (even though wife's transfer of closely held stocks to employee stock ownership program decreased value of corporation, wife held not to have dissipated assets as she

4. Although Husband did not tell Wife about these expenditures, he testified he did not do so as he did not want to worry Wife.

acted in good faith); *Goldman v. Goldman,* 248 N.J.Super. 10, 589 A.2d 1358 (1991) (husband not chargeable for dissipating $400,000 in marital funds where he used funds in good faith investing funds in business which failed).

In accordance with these courts, we hold poor business decisions, in and of themselves, do not warrant a finding of marital "misconduct," and that there must be some evidence of willful misconduct, bad faith, intention to dissipate marital assets, or the like, before a court may alter the equitable distribution award for such misconduct. As there is no such evidence in this case, we affirm the Court of Appeals' holding that Husband should not have been charged with the $24,-143.50 spent on his failing business.[5]

## 3. DATE OF VALUATION

The family court valued the marital residence as of the commencement of the marital litigation. The Court of Appeals held the family court should have used the payoff balance as of the date of the trial in order to afford Husband an equitable share of the increased value ($1339.73) of the home.[6] This was error.

---

5. Moreover, the Court of Appeals properly relied on *Panhorst v. Panhorst,* 301 S.C. 100, 390 S.E.2d 376 (Ct.App.1990) in holding it was error for the family court to include the $24,143.50 in the marital estate when these funds were no longer in existence. *Panhorst* persuasively demonstrates why a spouse should not be charged in a case such as this:

    Given the vicissitudes of life, the parties' fortunes will change over the years of a marriage. Often the marital estate may have enjoyed a greater value in the past than it does at the dissolution of the marriage. It may be affected by changes in the incomes and earning capacities of the spouses, their spending habits, their savings and investments, and a host of other factors. By requiring the estate to be identified as of the date marital litigation is filed, the Legislature has elected to foreclose the spouses from litigating every expenditure or transfer of property during the marriage. One spouse or the other may have spent marital funds foolishly or selfishly or may have invested them unprofitably. The statute wisely prevents the other spouse from resurrecting these transactions at the end of the marriage to gain an advantage in the equitable distribution. Were it to do otherwise, human greed and vindictiveness would transform the courts into "auditing agencies for every marriage that falters."

6. The increased equity stems from a reduction in the mortgage balance due to Wife's mortgage payments between the time of filing, and the

■ Initially, as noted above, the family court valued the home as of the date of the commencement of litigation. In his rehearing petition, Husband raised no claim that he was entitled to the increased equity in the home at the time of trial. Rather, he claimed only that the family court erred in valuing the equity of the home at $36,480.09, rather than $56,480.09 (representing the $20,000.00 credit given to Wife for the down payment and value of the lot). Husband raised the issue concerning the increased $1339.73 equity for the first time in his brief to the Court of Appeals. As this matter had not been raised to or ruled on by the family court, it should not have been considered by the Court of Appeals. *Talley v. South Carolina Higher Educ. Tuition Grants Committee,* 289 S.C. 483, 347 S.E.2d 99 (1986); *Ebert v. Ebert,* 320 S.C. 331, 465 S.E.2d 121 (Ct.App.1995).

■ Absent evidence Husband contributed to the payments on the mortgage between the time of separation and the time of trial, he is not entitled to share in the increased equity. Accordingly, we reverse the Court of Appeals' holding on this issue.[7]

The judgment below is

**AFFIRMED IN PART, REVERSED IN PART.**

FINNEY, C.J., TOAL, MOORE and BURNETT, JJ., concur.

---

time of trial. Wife made all payments on the mortgage between Husband's departure and the date of the hearing in August, 1995.

7. We concur with the Court of Appeals' opinion in *Smith v. Smith,* 294 S.C. 194, 363 S.E.2d 404 (Ct.App.1987) that both parties may be entitled to share in any appreciation in marital assets which occurs after the parties separate but before the parties divorce. However, an increase in equity due to Wife's payment of the mortgage is simply not the type of appreciation envisioned by *Smith.* Moreover, the case cited by the Court of Appeals is simply inapplicable. In *Cannon v. Cannon,* 321 S.C. 44, 467 S.E.2d 132 (Ct.App.1996), the court awarded the wife a "special equity" in non-marital property acquired by the Husband with marital funds (funds which a restraining order prohibited Husband from using) after the filing of the marital litigation. *Cannon* is inapposite.