## 1053

Richard B. COXE, Appellant v. Elizabeth Y. COXE, Respondent.

(363 S. E. (2d) 906)

Court of Appeals

*Benny R. Greer,* of *Greer & Milling,* Darlington, *for appellant.*

*J. D. Todd, Jr.,* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for respondent.*

Heard Sept. 21, 1987.

Decided Nov. 23, 1987.

*Per Curiam:*

Husband, Richard B. Coxe, appeals a court order awarding wife, Elizabeth Y. Coxe, ($2,500) per month alimony, ($500) per month child support, and a twenty-five percent equitable distribution of marital assets. We affirm in part and remand in part.

Although in equity matters this court has jurisdiction to find facts based on our view of the evidence, we are not required to disregard findings of the trial judge who is in a better position to evaluate them. *Allen v. Allen,* 287 S. C. 501, 339 S. E. (2d) 872 (Ct. App. 1986).

These parties were married on July 6, 1968. In November of 1967, the wife was involved in an automobile accident in which she sustained a head injury. The husband was familiar with the wife's medical condition as a result of the accident and consulted with her doctors prior to the marriage. They have two minor children from the marriage, the wife having custody of their daughter and the husband having custody of their son. Because of the wife's disability resulting from the accident, domestic help was provided in the home to help in the care of the house and the children and the husband concedes the wife is not capable of gainful employment. Prior to the divorce hearing, the husband was a one-third owner of Skufful Corporation. On March 13, 1986 the husband sold his interest in this corporation but was

still employed at Skufful as vice president and chief financial officer.

The husband argues the trial judge erred in certain findings of fact. The husband testified he expected to leave his employment with Skufful Corporation shortly after the end of 1986. The trial judge found "while this may be so, no good reason was advanced as to why he should leave a job paying him almost $5,000 a month." The husband's employment agreement, resulting from the sale of the company, provided for a starting date of the "initial period" on March 13, 1986. This was to continue until the husband resigned or his voting rights ceased under his Pledge Agreement. Under the Pledge Agreement, the husband's voting rights would not cease until he was released from all guaranties of the company's obligations and all "Company Debt" owing to him was paid in full. Further, the term of employment could be extended by written agreement of the parties. Thus, the termination of the husband's employment was speculative at most. Finally, the trial judge also found "there is no reason to believe if plaintiff voluntarily left that position that he could not obtain equally advantageous employment." We agree with the trial judge.

The husband next takes exception to the trial judge's finding that he needed no additional training to achieve his income potential. Since the husband ran a successful company for many years and has attended four and one half years of college, there is sufficient evidence to support the trial judge's finding.

The trial judge found the husband had the opportunity to acquire substantial capital assets in the future while the wife had little such opportunity. The husband claims he will no longer receive trust fund gifts from his father, however he overlooks the fact he has a net worth of over $600,000.

The husband testified he would receive $8,000 a month after he left the employment of Skufful Corporation until all his preferred stock had been repurchased. Of that amount ($3,861.06) would constitute dividends and ($4,138.94) would go toward the repurchase of the preferred stock. He argues the trial judge erroneously utilized the ($4,138.94) as part of his income in computing alimony and then doubled up on him by further considering

his preferred stock as a marital asset subject to equitable distribution. However, this is not the case. The trial judge used the figure of ($4,983.95) as the husband's salary as this was the amount he was receiving at the time of trial. He didn't consider the ($4,138.94) figure in his determination of the husband's annual income.

The husband contends the judge doubled up on him again by considering a figure of ($6,958) as a figure for his wife's alimony determination. This figure was reflected as medical aid on the husband's 1985 tax return and was deducted as payment for help for his wife. The judge therefore used this figure in granting the wife $580 per month in child care as opposed to the $690 per month the wife requested. The husband apparently misinterpreted the judge's order as including both the ($6,958) figure and the ($300) per month support the husband had been paying the wife prior to the hearing. However, the judge did not include the ($300) figure in determining support. He merely stated the sum of $300 was inadequate.

The husband argues further "doubling-up" occurred when the judge found $600 per month was being expended by the wife for domestic help when in fact this amount represented help provided the wife and her parents. Again, the husband misinterpreted the order. The judge didn't use the $600 figure in determining domestic help. The only figure he used was the $580 per month for child care. No additional amount was allowed for domestic help.

The husband contends the trial judge erred in awarding to the wife 25% in equitable distribution. He claims this is excessive considering the wife's financial contribution to the acquired property.

We recognize the undisputed fact that the wife was disabled prior to the marriage and was limited in her abilities. However, the record revealed she maximized her efforts in doing some work and engaging in an active social life which advanced her husband's commercial business. Also, even though she received domestic help, she contributed as homemaker and caretaker of the children. The husband married the wife with full knowledge of her disability and we hold he cannot now complain of it.

Family court judges are given broad jurisdiction in the equitable distribution of marital property. The trial judge may use any reasonable means to divide the estate equitably. *Bass v. Bass*, 285 S. C. 178, 328 S. E. (2d) 649 (Ct. App. 1985). The court's judgment will not be disturbed absent an abuse of discretion. *LaFitte v. LaFitte*, 280 S. C. 473, 313 S. E. (2d) 41 (Ct. App. 1984). The factors a judge should consider are "the relative incomes of the parties, their material contributions and debts, and the facts and circumstances of the particular case." *Stearns v. Stearns*, 284 S. C. 459, 327 S. E. (2d) 343, 344 (1985).

Next, the husband argues the trial judge erred in setting the amount of alimony and child support.

Specifically, he argues this amount exceeds the needs of the wife and consumes his anticipated income. In determining alimony, certain factors are to be considered. These are (1) the financial condition of the husband and needs of the wife, (2) the age and health of the parties, their respective earning capacities, their individual wealth, (3) the wife's contribution to the accumulation of joint wealth, (4) conduct of the parties, (5) respective necessities of the parties, (6) the standard of living of the wife at the time of the divorce, (7) the duration of the marriage, (8) the ability of the husband to pay alimony, and (9) the actual income of the parties. *Lide v. Lide*, 277 S. C. 155, 283 S. E. (2d) 832 (1981). Also, the amount of property awarded in an equitable distribution may be an important factor in determining alimony. *Johnson v. Johnson*, 288 S. C. 270, 341 S. E. (2d) 811 (Ct. App. 1986). The trial judge gave great consideration to the financial condition of the husband and the needs of the wife. We find the evidence easily supports the trial judge's award of alimony and child support and we affirm that finding.

The husband also argues the financial declaration of the wife was theoretical and the court erred in using it since the wife was living with her parents and never intimated she would seek separate living quarters. However, a court should not consider the contribution of a wife's relatives to her support in determining alimony. *Bailey v. Bailey*, 269 S. C. 1, 235 S. E. (2d) 801 (1977); *Prince*

*v. Prince*, 285 S. C. 203, 328 S. E. (2d) 664 (Ct. App. 1985). With the exception of a few expenses for which he made adjustments, the trial judge found the items on the wife's financial declaration to be reasonable and we affirm that finding also.

Finally, the husband argues the trial judge erred in the equitable distribution of the marital assets. He claims the "Wyndot lot," valued at $12,500, was included in the marital assets to be equitably distributed, but the same lot had previously been deemed a non-marital asset of Mrs. Coxe and the deed to the same was ordered to be turned over to Mrs. Coxe. The confusion as to the existence or non-existence of two separate pieces of property lies in the two different labels used. Both Mr. Coxe and Mrs. Coxe testified to the existence of a "Somerset lot" belonging to Mrs. Coxe. The financial declaration of Mr. Coxe lists one "Wyndot lot" valued at $12,500. The financial declaration of Mrs. Coxe lists a "lot in Somerset" in the name of her husband valued at $12,800. The record contains no evidence the trial judge was made aware the "Somerset" and "Wyndot" lot were the same. While the inference is strong that they are the same, we cannot rely merely on the bald assertion of Mr. Coxe when there is no unequivocal evidence in the record. We therefore remand this issue to the lower court to determine whether the "Wyndot" and "Somerset" lot are the same and, if they are, for an adjustment of the value of the marital assets accordingly.

Affirmed in part and remanded in part.