606 S.E.2d 489

**Patricia E. DEIDUN, Appellant,**

v.

**Richard C. DEIDUN, Respondent.**

**No. 3891.**

Court of Appeals of South Carolina.

Heard Sept. 15, 2004.
Decided Nov. 22, 2004.

48

50

52

Daniel D. D'Agostino, of York, for Appellant.

Lucy London McDow, of Rock Hill, for Respondent.

BEATTY, J.:

In this domestic matter, Patricia E. Deidun (Wife) appeals the family court's final order, arguing the court erred in: (1) defining a car as nonmarital property; (2) distributing the marital assets and debts; (3) failing to award adequate alimony; and (4) failing to award adequate attorney's fees. We affirm.

## FACTS

Wife and Richard C. Deidun (Husband) were married on April 23, 1977, and separated on December 17, 1999, when Husband left the marital home. The parties had a son during the marriage, born October 27, 1981. Husband worked throughout the marriage, except for a seven-week period in

1999 when he suffered from depression. Wife also worked either part-time or full-time jobs throughout the marriage, with the exception of two years after the birth of their son. Wife was the primary party responsible for caring for the parties' son, cleaning, cooking, buying the family's food and clothes, and handling the family's finances.

The parties lived in Michigan after they were married. In 1988, Husband accepted a position in Charlotte, North Carolina, and the family moved there. Husband's North Carolina position paid him substantially less than his former Michigan position. The parties soon accumulated nearly $33,000 in credit card debt, and Wife did not tell Husband about the debt. Husband discovered the marital debt in 1993, and he took control over the finances. The parties borrowed $28,000 from Wife's father to pay off a portion of the debt. Two years later, Husband repaid Wife's father for the loan, paid off all of the parties' other credit card debts, and reduced the family to one Wachovia credit card which they both used. At that time, Wife resumed responsibility over the family's finances.

The parties lived a comfortable lifestyle. They took vacations each year and enjoyed riding motorcycles. Husband used money inherited from his father to establish Putnam IRA accounts for himself and Wife. In 1996, the parties sold their Charlotte home, clearing nearly $80,000 in equity from the sale. The couple built a 3,400 square foot home in Fort Mill, South Carolina, for $253,000. The parties also took out a $25,000 line of credit on their new home and used $19,000 to purchase a second motorcycle.

In 1999, Husband suffered from depression and he took leave from work. While recovering, he cleaned up his old motorcycle, sold it, and gave $9,200 to Wife to pay on the line of credit used to buy the new motorcycle. He was informed by Wife that there was still $25,000 owing on the line of credit. Because the parties only used $19,000 on the line of credit to purchase the new motorcycle and they had been paying on the line of credit for several years, Husband was surprised. When he investigated the parties' financial status, he learned that the balance on the line of credit was actually $31,000, not $25,000 as Wife had told him. He also learned that Wife had withdrawn and spent nearly $27,000 from her Putnam IRA

account without disclosing it to him, and Wife had incurred nearly $7,500 in credit card debt without his knowledge. Wife had also opened a Truliant credit union line of credit, with a balance of $7,218, that Husband was not aware of. The parties eventually separated in December 1999 when Husband left the marital home.

After the parties separated in December 1999, they agreed to sell the marital home and Wife decided to build a new $172,000 home for herself and the parties' son. Wife obtained several credit cards and charged nearly $19,000 before the parties entered into a consent order in March 2000. The March 6, 2000 temporary consent agreement provided that Husband would pay: child support for the parties' seventeen-year old son; $1,000 a month in alimony to Wife; all the marital bills until Wife moved from the marital home; $16,300 to pay off the balance due on Wife's car; and $75,000 to Wife to assist in closing on her new home. Husband liquidated his Putnam IRA account, subject to a substantial early withdrawal tax penalty, and gave Wife $75,000 to put towards her new home and $16,300 to pay off the balance owed on her car. Wife used the funds to put $43,000 down on her new home and to pay off some of the credit card debt. The parties sold their home in September 2000 for $286,000.

At some point, Husband started a relationship with another woman. Husband, his paramour, and the paramour's children eventually moved to California when Husband accepted a job there in 2000. Wife filed a summons and complaint on September 18, 2000, seeking a divorce based on Husband's adultery. On November 7, 2000, a second consent order was filed memorializing the parties' agreement that Husband could have $75,000 from the sale of the parties' house, with Husband's attorney holding the remaining funds in trust. A third consent order was filed on December 13, 2000, in which Wife signed a quit-claim deed to any home Husband purchased in California, a community property state. Husband voluntarily paid his son's college tuition and purchased a car for his son.

This action was tried on July 11, 2001. After hearing testimony from Wife and Husband, the family court granted Wife a divorce based on Husband's adultery. The court also found that Wife's failure to handle the family finances respon-

sibly and failure to inform Husband about the status of their finances or her large expenditures amounted to a form of misconduct that was a contributing factor to the breakup of the marriage. The court found Husband's Corvette was not marital property and ordered the marital assets be split with 65% going to Husband and 35% to Wife. The court also divided the marital debt, awarded Wife $1,200 per month in alimony, and awarded Wife $2,570 in attorney's fees. Finally, the court ordered a qualified domestic relations order to divide the marital portions of Husband's retirement accounts on a 50/50 basis.

After Wife filed a motion to reconsider, the family court issued a supplemental order, finding that: (1) Wife was not fiscally responsible and would likely spend beyond her means, regardless of the size of award she were to be given by the family court; (2) Husband voluntarily paid for the son's college expenses; and (3) Wife's expenses cited to support her claim for additional alimony appeared to be inflated by debt service on additional borrowing and appeared excessive in light of Wife's receipt of $75,000 from Husband during their separation. The court noted that its original order actually failed to allocate marital assets 65/35 in favor of Husband, so the court ordered that Husband's attorney distribute the entire $10,240 in funds remaining from the sale of the parties' home to Wife. The court refused to alter the original order further. Although the court intended to divide the non-pension assets on a 65/35 basis, the distribution after the supplemental order amounted to an approximately 59/41 allocation.

Wife timely appealed the family court's order. Husband filed a motion before this court to remand the matter when he learned that his taxes had been miscalculated and he owed an additional $10,002.60 early withdrawal penalty on the Putnam IRA account he cashed in to pay Wife. This court granted the motion to remand on February 20, 2003, and Husband filed a motion for relief from judgment before the family court pursuant to Rule 60, SCRCP.[1] The family court indicated at the hearing that it would deny Husband's motion, and the court

---

1. It is unclear when Husband filed this motion in family court because the copy of this document contained in the record is not dated.

refused to: grant him relief from judgment; reopen the case; consider the additional $10,002.60 tax penalty as marital debt; or redistribute the marital assets and debts. However, the May 9, 2003 written order granted Husband's motion to the extent that the additional $10,002.60 would be considered marital debt and Husband would be responsible for the debt. Wife appeals both the supplemental order and the order on Husband's Rule 60 motion.

## STANDARD OF REVIEW

In appeals from the family court, this court has the authority to find the facts in accordance with its view of the preponderance of the evidence. *Rutherford v. Rutherford,* 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992). This broad scope of review does not, however, require this court to disregard the findings of the family court. *Stevenson v. Stevenson,* 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981). Neither is the court required to ignore the fact that the family court judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson,* 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).

## LAW/ANALYSIS

### I. NONMARITAL PROPERTY

Wife argues Husband's Corvette was transmuted into marital property during the marriage, and thus the family court erred in determining that it was nonmarital property. Alternatively, Wife asserts that she was entitled to special equity from the increase in value of the Corvette during the marriage. We disagree.

Property acquired prior to the marriage is generally considered nonmarital. S.C.Code Ann. § 20–7–473(2) (Supp. 2003). Although nonmarital property is generally not subject to equitable distribution, the other spouse may be entitled to a special equity in the property. S.C.Code Ann. § 20–7–473(5) (Supp.2003). A spouse obtains an equitable interest in improvements to property to which he or she has contributed,

even if the property is nonmarital. *Johnson v. Johnson,* 296 S.C. 289, 299, 372 S.E.2d 107, 113 (Ct.App.1988).

■■ Nonmarital property may be transmuted into marital property. In determining whether property has been transmuted, courts must consider whether the property: (1) "becomes so commingled with marital property as to be untraceable;" (2) is titled jointly; or (3) "is utilized by the parties in support of the marriage or in some other manner so as to evidence an intent by the parties to make it marital property." *Jenkins v. Jenkins,* 345 S.C. 88, 98, 545 S.E.2d 531, 537(Ct.App.2001). "Transmutation is a matter of intent to be gleaned from the facts of each case." *Id.* The burden is on the spouse claiming transmutation to produce objective evidence that the parties considered the property to be marital during the marriage. *Id.*

It is undisputed that Husband purchased his 1973 Corvette when it was new for $5,900, and he paid off the balance owing on the car a year before the parties married. Wife testified the Corvette was Husband's "prized possession," and Husband described it as his "toy" and "weekend pleasure vehicle." With the exception of an eighteen-month period when it was necessary for Husband to drive the car on a daily basis, the car was not regularly used. While the parties lived in Michigan, the Corvette was stored and not insured during the winter months every year. Husband primarily drove the Corvette, although Wife occasionally drove it. During the marriage, Husband maintained the vehicle and made improvements to it including installing new calipers, a stainless steel exhaust system, and new wheels, for a total cost of $1,500. At the time of the final hearing, the Corvette had increased in value to $15,000. The family court specifically held that the Corvette was the nonmarital property of Husband.

Despite Wife's argument that the car was at times used during the marriage by both parties, the evidence indicates the car was more of a pleasure vehicle and not necessary for transportation for the parties. Although the Corvette was maintained and insured during the marriage from the parties' joint account, to which both parties contributed, nothing indicates the parties' intentions that the Corvette change from nonmarital to marital property. Because this car was not

used for the benefit of the marriage, we find the car was not transmuted and agree with the family court that the Corvette was Husband's separate, nonmarital property.

Further, there is no evidence in the record to support Wife's argument that she is entitled to special equity from the increase in value of the Corvette. Other than the money from the parties' joint account, Wife made no other contribution to the maintenance or improvements to the Corvette. The evidence in the record indicates that, other than routine maintenance, the cost of improvements was only $1,500. Accordingly, the evidence does not support Wife's argument that she is entitled to special equity in the vehicle.

## II. EQUITABLE DISTRIBUTION

Wife argues the distribution of the parties' assets and debts was not fair and equitable because the family court did not adequately consider the statutory factors and erred in finding she was guilty of economic misconduct. Wife also asserts the family court erred in considering additional evidence concerning tax liabilities pursuant to a Rule 60, SCRCP motion. We disagree.

### A. Fairness of the Distribution

Wife argues the family court erred in: (1) finding she committed "economic misconduct" which led to the dissolution of the marriage; (2) awarding a 59/41 distribution; and (3) failing to adequately consider all the statutory factors in dividing the martial assets and debts. We disagree.

The apportionment of marital property will not be disturbed on appeal absent an abuse of discretion. *Bungener v. Bungener*, 291 S.C. 247, 251, 353 S.E.2d 147, 150 (Ct.App. 1987). Section 20-7-472 lists fifteen factors for the court to consider in equitably apportioning a marital estate. S.C.Code Ann. § 20-7-472 (Supp.2003); *Greene v. Greene*, 351 S.C. 329, 340, 569 S.E.2d 393, 399 (Ct.App.2002). On appeal, this court looks to the overall fairness of the apportionment. *Johnson v. Johnson*, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct.App.1988). If the end result is equitable, it is irrelevant that the appellate court would have arrived at a different apportionment. *Id.*

Wife incurred $33,000 in credit card debt without informing Husband prior to 1993, when Husband took control of the

finances. After Wife regained responsibility for the family finances and without Husband's knowledge, she increased the parties' $25,000 line of credit to $31,000; withdrew nearly $27,000 from her Putnam IRA; incurred $7,500 in credit card debt; and opened a new line of credit with a balance of $7,218. Wife admitted at trial that she hid her expenditures, the parties' growing debt, and her withdrawal from her Putnam IRA account from Husband. Wife claimed she neglected to inform Husband because he had a stressful job and he did not want to be bothered with the financial details. Wife claimed she always spent the money on family necessities, including clothing, food, and other household debt. Wife incurred additional credit card debt between the parties' separation in December 1999 and the March 2000 temporary consent order. Wife testified that she incurred those debts to pay for household expenses, including nearly $2,000 in attorney's fees and nearly $5,000 in Christmas gifts for their son, including ski equipment and a $3,100 musical instrument. Husband testified that Wife's financial mismanagement led to the breakup of the marriage.

Citing *McDavid v. McDavid*, 333 S.C. 490, 511 S.E.2d 365 (1999), Wife complains that the family court erred in finding her guilty of economic misconduct and in considering the economic misconduct in the equitable distribution. In *McDavid*, the husband used $24,13.50 in marital funds to support his failing business during the marriage without informing the wife. The family court found the husband's actions constituted marital misconduct, and the court used that amount in adjusting downward the husband's share of the marital assets. The supreme court affirmed this court's finding that the husband's imprudent business decisions did not constitute marital misconduct:

> In accordance with [other jurisdictions], we hold poor business decisions, in and of themselves, do not warrant a finding of marital "misconduct," and that there must be some evidence of willful misconduct, bad faith, intention to dissipate marital assets, or the like, before a court may alter the equitable distribution award for such misconduct.

*McDavid*, 333 S.C. at 496, 511 S.E.2d at 368 (emphasis added).

We find *McDavid* may be distinguished from the present case. Although there is nothing in the record to indicate that

Wife acted with any bad faith in her spending habits, we believe McDavid is more applicable to cases involving business expenditures. Wife's depletion of marital funds and increase of the marital debt in the present case were not to support a failing business. Accordingly, we find *McDavid* inapplicable in the present case and the family court's consideration of Wife's failure to appropriately manage the family finances was not error.

Further, we find the evidence in the record supports the court's findings that Wife's willful habit of spending irresponsibly was one factor that led to the breakup of the marriage. After Wife incurred substantial marital debt and Husband paid it off, she again incurred substantial debt and depleted funds from a marital IRA account, without informing Husband. She admitted that she hid the mounting debts, expenditures, and a withdrawal from the IRA from Husband. Other than Wife's testimony that she spent the money on the family, there is nothing in the record to show actually what the money was spent on. Wife's intentional, reckless spending habits, and the associated debt, placed significant stress on the parties' marriage and led to the breakup of the marriage. Her spending amounted to mismanagement of the family finances and to economic misconduct.

Finally, we find the family court adequately considered the statutory factors, including Wife's financial misconduct, in awarding a 59/41 division of the non-pension marital assets in favor of Husband. A family court must consider several factors in equitably dividing marital property, including: (1) the length of the marriage and the ages of the parties; (2) the martial misconduct of either party; (3) the value of the marital property; (4) the income and earning potential of each spouse; (5) each party's emotional and physical health; (6) the need of a spouse for training to reach his or her earning potential; (7) each party's nonmarital property; (8) retirement benefits; (9) awards of alimony; (10) whether the marital home should be awarded to one spouse; (11) the tax consequences of a particular distribution; (12) the existence of support obligations from prior marriage; (13) liens or encumbrances on marital property and any debt; (14) child custody arrangements; and (15) any other relevant factor the trial court enumerates in the order. S.C.Code Ann. § 20–7–472 (Supp.2003).

At the time of the final hearing, the parties had been married twenty-two years and their only child was over the age of eighteen. Neither party had a college education, although Husband's specialized skills made him highly marketable in his field. Wife was forty-five years old, employed to her potential, earned approximately $2,300 per month, and was in relatively good health. Husband was forty-nine years old, employed to his potential, earned approximately $81,212 per year, and was in relatively good health. Wife had $110,980.79 in non-pension marital assets in her possession, and Husband had $175,495.96 in non-pension marital assets in his possession. Husband earned pension benefits at two of his jobs; one of the retirement accounts was earned entirely during the marriage and 80% of the other account was earned during the marriage. The marital debts included a $34,967 tax penalty for Husband's early withdrawal from his Putnam IRA; $7,155.86 from Wife's Truliant line of credit; $8,767.18 on Wife's Shade Platinum credit card; $10,117.87 on Wife's MBNA credit card; a $16,149.56 lien on Wife's car; and $11,609 in tax liability from Wife's early withdrawal from her Putnam IRA.

The evidence indicates that the family court adequately considered all the statutory factors in equitably dividing the marital assets and debts. In addition to considering the above factors, the court considered Husband's adultery, Wife's non-economic contributions to the marriage, and Wife's economic misconduct. With the exception of the tax liability incurred when Wife withdrew funds from her Putnam IRA, of which Husband was ordered to pay 65%, the court ordered each party be responsible for their own debt. Out of a total marital debt of $88,766.47, Wife was ordered to pay $46,253.62 or 52%. In the supplemental order, the court awarded Wife $120,220.79 of the total $296,716.75 in non-pension marital assets, or 41%. Additionally, the court granted Wife 50% of the marital portions of Husband's retirement accounts when they vested. Further, the parties admitted at the oral argument of this case that considering the pension award would raise Wife's percentage of the marital estate above 41%.

Although the parties in the present case had a long marriage and each party contributed financially to the marriage, we find, based on the factors considered by the family court,

that the actual distribution of assets and debts was equitable in this case.

### B.  Post-trial Evidence

Wife asserts that, upon remand from this court, the family court erred in "reopening the case and accepting additional evidence" regarding the tax penalty from the early withdrawal of Husband's Putnam IRA account.  We disagree.

A circuit court may relieve a party from a final judgment pursuant to Rule 60(b)(1), SCRCP, where a party shows "the judgment or order was induced by mistake, inadvertence, surprise, or excusable neglect." *Hillman v. Pinion ex. rel Estate of Hillman,* 347 S.C. 253, 256, 554 S.E.2d 427, 429 (Ct.App.2001).  Relief from judgment under Rule 60, SCRCP, rests within the sound discretion of the trial court, and the court's findings will not be disturbed on appeal absent an abuse of discretion. *Thompson v. Hammond,* 299 S.C. 116, 119, 382 S.E.2d 900, 902–03 (1989).

During the final hearing, Husband presented two un-filed tax returns prepared by his accountant.  One showed his estimated taxes had he not cashed out his Putnam IRA. The second tax return showed he owed $34,967 as an early withdrawal penalty for cashing out the Putnam IRA. The family court determined the early withdrawal penalty was a marital debt and ordered Husband to pay the entire $34,967.

After this court remanded the appeal to the family court, a hearing was held on Husband's Rule 60, SCRCP, motion for relief from judgment.  Husband alleged that his accountant had underestimated the tax penalty for the early withdrawal from the Putnam IRA account, and he learned after the final divorce hearing that he owed an additional $9,132 plus $870 in interest.  He alleged the family court should consider this amount to be marital debt and then recalculate the debt.  The family court indicated at the hearing that it was not willing to alter the facts and it was denying the motion to reopen the case and consider the additional penalty.  However, the court held in the written order that:  the additional taxes constituted newly-discovered evidence;  the prior evidence regarding the miscalculated tax penalty was submitted as a result of mistake, inadvertence, or excusable neglect;  and the additional

tax penalty was marital debt of which Husband would be solely responsible. The family court's consideration of the additional taxes as marital debt and award of them to Husband lowered Wife's award of marital debts from 52% to 47%.

Although Wife complains that the family court committed an error of law in granting Husband's Rule 60, SCRCP, motion and considering the additional debt, we find no abuse of discretion. The court found that Husband's reliance on his accountant's figures was justified and the miscalculation was the result of mistake or excusable neglect. Further, the consideration and award of the additional debt did not harm the Wife insofar as she was not required to pay any of the additional debt. Accordingly, we find no error with the family court's order granting Husband's motion and awarding responsibility for the additional debt to Husband.

### III. ALIMONY

Wife argues the family court erred in only awarding her $1,200 a month in alimony. We disagree.

"An award of alimony rests within the sound discretion of the family court and will not be disturbed absent an abuse of discretion." *Allen v. Allen*, 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct.App.2001). "Alimony is a substitute for the support that is normally incident to the marital relationship." *McElveen v. McElveen*, 332 S.C. 583, 599, 506 S.E.2d 1, 9 (Ct.App.1998). The purpose of alimony is to place the supported spouse in the position he or she enjoyed during the marriage. *Id.* However, alimony should not "serve as a disincentive for spouses to improve their employment potential or to dissuade them from providing, to the extent possible, for their own support." *Id.*

Factors to be considered in making an alimony award include: (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and non-marital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax

consequences; (12) prior support obligations; and (13) other factors the court considers relevant. S.C.Code Ann. § 20–3–130(C)(Supp.2003).

At the final divorce hearing, Wife submitted a financial declaration showing expenses for herself and the parties' grown son of nearly $4,000 a month. Included in the expenses was a monthly payment on a $27,274 second mortgage on Wife's new home; payment on a $9,278 line of credit; and payments on two or more credit cards. Also included as an expense was a $375 monthly car payment. Wife only earned $2,300 in monthly wages. By contrast, Husband's financial declaration indicated he earned nearly $82,000 a year.

In the final divorce decree, the family court considered the statutory factors for alimony. In reviewing Wife's expenses, the court specifically held that it would not consider her expenses related to servicing debt in calculating alimony and further found that her expenses might be inflated. Reviewing all the factors, the court awarded Wife $1,200 in alimony. In the supplemental order, the court refused to increase the alimony, stating Wife's monthly expenses "appear to be inflated by debt service on additional borrowing, for a second mortgage and credit card expenditures, which appeared to be excessive" in light of the substantial cash payout given to Wife by Husband. The court also noted that Wife "is not fiscally responsible and is likely to spend beyond her means, regardless of the size of award she receives from this court."

The evidence supports the family court's award. Both parties were working to their potential and neither suffered from ill health. Husband earned substantially more than Wife, and the family court found him guilty of adultery. Although Wife had large expenses, the expenses can predominantly be attributed to credit card debt and debt on a second mortgage. Wife's past spending habits is evidence of her lack of fiscal responsibility. Considering these factors, we find the $1,200 a month alimony award is appropriate.

## IV. ATTORNEY'S FEES

Wife argues the family court erred in only awarding her $2,570 in attorney's fees. We disagree. The family court may order payment of attorney's fees to a party pursu-

ant to South Carolina Code Ann. § 20–3–130(H) (Supp.2003). Whether to award attorney's fees is a matter within the sound discretion of the trial court, and the award will not be reversed on appeal absent an abuse of discretion. *Bakala v. Bakala,* 352 S.C. 612, 633–34, 576 S.E.2d 156, 167 (2003). The family court should consider: the parties' ability to pay their own fee; the beneficial results obtained by counsel; the financial conditions of the parties; and the effect of the fee on each parties' standard of living. *E.D.M. v. T.A.M.,* 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). To determine the amount of an award of attorney's fees, the court should consider: the nature, extent, and difficulty of the services rendered; the time necessarily devoted to the case; counsel's professional standing; the contingency of compensation; the beneficial results obtained; and the customary legal fees for similar services. *Glasscock v. Glasscock,* 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

Wife consulted several attorneys immediately following the parties' separation. She paid fees for representation during the consent agreements totaling nearly $5,000. Wife testified that she charged $2,000 of these fees to her credit card, and the debt was distributed by the court as marital debt. She also incurred $990 in private investigator fees. After filing the underlying action for divorce, Wife paid her current counsel $1,500 as a retainer fee. Wife's counsel submitted an affidavit for attorney's fees to the family court showing that the retainer fee had been spent and Wife owed an additional $2,540.75. Wife requested the family court to award her $11,560 in attorney's fees. After considering the Glasscock factors, the court awarded her $2,570 in attorney's fees.

The amount of fees awarded to Wife is supported by the record. Although Wife spent several thousands of dollars in fees prior to the filing of the divorce action, the record shows she merely consulted some attorneys and the other attorneys only represented her in consent agreements. Further, the $2,000 in credit card debt Wife used to pay legal expenses was counted as marital debt and equitably distributed. The family court did not abuse its discretion in awarding Wife the amount of attorney's fees that remained due to her final attorney.

## CONCLUSION

The family court correctly held that Husband's Corvette was nonmarital property. The evidence supports the family court's findings that Wife was guilty of economic misconduct that led to the dissolution of the marriage. The overall distribution of the marital assets was fair, and the court did not abuse its discretion in granting Husband's Rule 60, SCRCP, motion to consider and distribute the additional tax penalty. Finally, we find no error with the court's award of alimony or attorney's fees. Accordingly, the order of the family court is

AFFIRMED.

STILWELL, and SHORT, J.J., concur.