THIS OPINION HAS NO PRECEDENTIAL VALUE

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Lois Burris Brunson, Appellant/Respondent,
 v.
 Dennis Dean Brunson, Respondent/Appellant.
 
 
 

Appeal From York County
 Georgia V. Anderson, Family Court Judge
Unpublished Opinion No. 2007-UP-354
Submitted May 1, 2007  Filed July 16, 2007
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED 

 
 
 
 Thomas F. McDow, of Rock Hill, for Appellant/Respondent.
 David C. Shea and John S. Nichols, both of Columbia, for Respondent/Appellant.
 
 
 

PER CURIAM:  In this domestic action, Lois Brunson (Wife) and Dennis Brunson (Husband) appeal the family courts order.  Both parties assign numerous points of error, including the award of alimony, the equitable distribution of the marital assets, and the failure to award attorneys fees.  We affirm in part, reverse in part, and remand.
FACTS
Wife and Husband married on March 9, 1986 and separated on October 18, 2002.  Both parties had children from their previous marriages, but they had no children from their marriage.  Wife brought a home into the marriage worth approximately $70,000 at the time they married, which had a mortgage of approximately $32,000.  Wife also had a retirement account worth $12,000 at the time of the marriage.  In 1993, when the account was worth $25,000, Wife withdrew the funds with Husbands knowledge and spent them on the family and improvements to the marital home.  In 1998, with Wifes knowledge, Husband opened a blow account, into which he deposited funds for his personal use. 
 
During the marriage, Wife worked as manager of a credit union and earned approximately $34,000 per year.  During her employment, Wife used Husbands and her daughters name to secure several loans and obtained additional funds on already existing loans in their names.  Much of the loan proceeds were used to finance a ski boat, a vehicle, a tractor, family vacations, to pay off credit cards, and for other family purposes.  When the credit union learned of Wifes actions, she was fired.  
 
In September 2003, Wife pled guilty, pursuant to a negotiated plea, to twelve charges of forgery, four charges of bank fraud, and one charge of breach of trust.  Wife received concurrent sentences amounting to a ten-year sentence suspended upon five years probation.  Prior to her guilty plea, she paid $30,000 in restitution, and at the time of the divorce decree, she still owed approximately $26,000 in restitution as well as $4,250 in fees.  
Wife is currently employed at a salon and spa and has gross earnings of $1,163.72 per month and net earnings of $923.74.  Husband continues to work at Duke Power.  He has gross monthly earnings of $5,339, and after taxes and insurance premiums, he has net earnings of $3,045.  He also receives mileage income and a yearly bonus.  Wife settled a personal injury lawsuit for $32,500 prior to attorneys fees and medical bills, but at the commencement of litigation, Wife had yet to receive the proceeds.  Husband received a workers compensation settlement for $108,000 following the parties separation.  
 
On November 2, 2002, Wife filed a complaint requesting alimony, separate maintenance and support, equitable apportionment of the marital property, attorneys fees, and pendente lite relief.  On December 11, 2002, the family court issued a temporary order declining to award alimony pendente lite.  Further, the family court determined Husband would retain the use of the marital home but ordered him to pay Wife $300 per month as an unspecified advance for the use of her interest in the home. 
 
Husband remained in the marital home until the summer of 2003, when he moved in with his girlfriend in North Carolina.  In June 2004, Husband bought a home in North Carolina.  Husbands son continued to reside in the marital home.  Wife has lived with her mother since the parties separation.  On November 20, 2003, Wife filed a supplemental complaint requesting a divorce on the grounds of adultery and one years continuous separation.  

On February 9, 2005, the family court granted the parties a divorce based on one years continuous separation.  The family court awarded sixty percent of the marital estate to Husband and forty percent to Wife.  The family court ordered the parties to sell the marital home, but it found Wife had a special equity of $35,000 in the home.  Additionally, the family court found each party should retain all of their respective personal injury awards.  The remainder of the marital estate was valued at $21,195, although $2,100 of that value was debt.  

Additionally, the family court classified the $300 monthly payment to Wife as alimony.  The family court found Wife was entitled to continue receiving alimony until December 2005, explaining the award was both rehabilitative and lump sum and would enable her to maintain some stability during the next year while the property division was being accomplished and would also help her maintain health insurance.  In addition, the family court determined each party should be responsible for their respective attorneys fees.  Wife filed a Rule 59(e), SCRCP, motion for reconsideration, and the family court reaffirmed its order, making minor modifications.  This appeal followed.
STANDARD OF REVIEW
On appeal from a family court order, this Court has authority to correct errors of law and find facts in accordance with its own view of the preponderance of the evidence.  
E.D.M. v. T.A.M., 307 S.C. 471, 473, 415 S.E.2d 812, 814 (1992).  When reviewing decisions of the family court, we are cognizant of the fact that the family court had the opportunity to see the witnesses, hear the testimony delivered from the stand, and had the benefit of that personal observance of and contact with the parties which is of peculiar value in arriving at a correct result in a case of this character.  DuBose v. DuBose, 259 S.C. 418, 423, 192 S.E.2d 329, 331 (1972) (internal quotations omitted).  When the evidence is conflicting and susceptible of different inferences, the family court has the duty of determining not only the law of the case, but the facts as well.  Anders v. Anders, 285 S.C. 512, 514, 331 S.E.2d 340, 341 (1985); see also Woodall v. Woodall, 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996) (holding when evidence is disputed, the appellate court may adhere to the family courts findings).  
 
LAW/ANALYSIS
I.  Alimony
Wife contends the family court erred in awarding rehabilitative and lump sum alimony rather than permanent periodic alimony because the family court failed to make findings of special circumstances.  Wife further argues the family court erred in awarding alimony of only $300 per month.  Husband contends the family court erred in awarding Wife any alimony.  
 
The amount of alimony, as well as a determination of whether the spouse is entitled to alimony, is within the sound discretion of the family court.  Smith v. Smith, 264 S.C. 624, 628, 216 S.E.2d 541, 543 (1975).  An abuse of discretion occurs when the decision is controlled by an error of law or is based on factual findings that are without evidentiary support.  
Degenhart v. Burriss, 360 S.C. 497, 500, 602 S.E.2d 96, 97 (Ct. App. 2004).  
The purpose of alimony is to place the supported spouse, as close as is practical, in the same position of support as during the marriage.  Johnson v. Johnson, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct. App. 1988).  If the claim for alimony is well-founded, the family court has the duty of making an alimony award that is fit, equitable, and just.  Allen v. Allen, 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct. App. 2001).  The family court should consider the following factors in awarding alimony: 
 

 (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; and (12) prior support obligations; as well as (13) other factors the court considers relevant.

Id. (citing S.C. Code Ann. § 20-3-130(C) (Supp. 2000)).  
 
The South Carolina Supreme Court has further held that [t]hree important factors in awarding periodic alimony are (1) the duration of the marriage; (2) the overall financial situation of the parties, especially the ability of the supporting spouse to pay; and (3) whether either spouse was more at fault than the other.  Patel v. Patel, 359 S.C. 515, 529, 599 S.E.2d 114, 121 (2004).  
 
The family court may grant alimony and separate maintenance and support awards pendente lite and permanently in amounts and for lengths of time that the family court considers appropriate under the circumstances.  S.C. Code Ann. § 20-3-130(B) (Supp. 2006).  These awards may include: (1) periodic alimony . . . (2) lump-sum alimony . . . (3) rehabilitative alimony . . . (4) reimbursement alimony . . . (5) separate maintenance and support . . . [and] (6) [s]uch other form of spousal support, under terms and conditions as the court may consider just, as appropriate under the circumstances without limitation to grant more than one form of support.  Id.  
 
 Section 20-3-130(B)(2) describes lump sum alimony as a finite total sum to be paid in one installment, or periodically over a period of time, terminating only upon the death of the supported spouse, but not terminable or modifiable based upon remarriage or changed circumstances in the future.  The statute further provides the purpose of lump sum alimony may include, but not be limited to, circumstances in which the family court finds alimony appropriate but determines that the award be finite and nonmodifiable.  Id.     To grant lump sum alimony, the court must find special circumstances that would make any award of lump sum alimony advisable.  Atkinson v. Atkinson, 279 S.C. 454, 456-57, 309 S.E.2d 14, 15 (Ct. App. 1983).  
 
Typically, the primary justification in awarding lump sum alimony is the unreliability of the supporting spouse to make regular payments.  See Roy T. Stuckey, Marital Litigation in South Carolina 217 (3d ed. 2001); see also Jones v. Jones, 270 S.C. 280, 282, 241 S.E.2d 904, 905 (1978) (upholding the award of $36,000 in lump sum alimony when husband drank excessively, was not regularly employed, had failed to pay child support for the last five years, threatened to leave the country to avoid payments, and had just inherited property valued near $100,000); Murdock v. Murdock,243 S.C. 218, 225, 133 S.E.2d 323, 326 (1963) (affirming lump sum alimony of $4,250 when the husband moved to a distant state, remarried, and had been found in contempt of court for failing to pay pendente lite alimony); Hendricks v. Hendricks,285 S.C. 591, 594, 330 S.E.2d 553, 554 (Ct. App. 1985) (affirming lump sum alimony of $30,000 when husband failed to support his family for nineteen years and quickly spent a $45,000 inheritance by purchasing a truck and by paying the hospital bills of a paramour in another state).  
 
On the other hand, section 20-3-130(B)(3) defines rehabilitative alimony as follows:

 [A] finite sum to be paid in one installment or periodically, terminable upon the remarriage or continued cohabitation of the supported spouse, the death of either spouse . . . or the occurrence of a specific event to occur in the future, or modifiable based upon unforeseen events frustrating the good faith efforts of the supported spouse to become self-supporting or the ability of the supporting spouse to pay the rehabilitative alimony.  
 

The purpose of rehabilitative alimony may include, but is not limited to, circumstances in which the family court finds providing for the rehabilitation of the supported spouse appropriate.  Id.; see also Eagerton v. Eagerton, 285 S.C. 279, 282, 328 S.E.2d 912, 914 (Ct. App. 1985) (The purpose of rehabilitative alimony is to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which the dependent spouse might retrain and rehabilitate himself or herself thereby limiting the duration of the time in which the supporting spouse is burdened by spousal support.).  Moreover, rehabilitative alimony permits a couple to develop their own lives free from obligations to each other.  Id., 328 S.E.2d at 914-15.  For the family court to grant rehabilitative alimony, the evidence must demonstrate the supported spouse will be self-sufficient at the expiration of the ordered payments.  Toler v. Toler, 292 S.C. 374, 378, 356 S.E.2d 429, 431 (Ct. App. 1987).
In its decision to award lump sum and rehabilitative alimony, the family court stated it was continuing the temporary alimony of $300 per month.  However, the $300 per month provided by the temporary order was not temporary alimony but rather an unspecified advance on Wifes interest in the home.  Further, we find the family court failed to make sufficient findings to support its award of lump sum and rehabilitative alimony.
The family court stated the award was to enable Wife to maintain some stability during the next year while the property division was being accomplished and to help her maintain health insurance.  Without further justification, these findings are insufficient to justify either lump sum or rehabilitative alimony.  
 
Consequently, the insufficiency of the record before this Court requires us to remand this case to the family court to determine whether an alimony award is appropriate.  On remand, if the family court wishes to award alimony, it must make specific findings in the order to support the award.  
 
Further, alimony is intended to be neither a reward nor a punishment.  Kane v. Kane, 280 S.C. 479, 484, 313 S.E.2d 327, 330 (Ct. App. 1984).  The purpose of alimony is to maintain as near as possible the status quo established by the parties during the marriage.  Id.  In determining whether to award alimony and what amount and type of alimony to award, [A]ll of the facts and circumstances disclosed by the record should be considered; no one factor should be determined dispositive.  Nienow v. Nienow, 268 S.C. 161, 171, 232 S.E.2d 504, 510 (1977).  
Based on these considerations, we leave it to the family courts discretion to take into account all of the relevant factors in determining whether alimony is appropriate, and if it is, in deciding what type and what amount should be awarded. 
 
II.  Equitable Distribution
A.  Overall Distribution
Both Husband and Wife maintain the family court erred in awarding a sixty-forty division of marital property in favor of Husband.  We disagree.
The division of marital property is within the family courts sound discretion, and this decision will not be disturbed on appeal absent an abuse of discretion.  Craig v. Craig, 365 S.C. 285, 290, 617 S.E.2d 359, 361 (2005).  The appellate court looks to the overall fairness of the apportionment.  Deidun v. Deidun, 362 S.C. 47, 58, 606 S.E.2d 489, 495 (Ct. App. 2004).  If the end result is equitable, the fact that the appellate court would have arrived at a different apportionment is irrelevant.  Id.  The doctrine of equitable distribution is based on a recognition that marriage is, among other things, an economic partnership.  Mallett v. Mallett, 323 S.C. 141, 150, 473 S.E.2d 804, 810 (Ct. App. 1996).  Upon dissolution of the marriage, property acquired during the marriage should be divided and distributed in a manner which fairly reflects each spouses contribution to its acquisition, regardless of which spouse holds legal title.  Id.
In making an equitable apportionment of marital property, the family court must proportionately weigh the following factors:

  (1) the duration of the marriage together with the ages of the parties at the time of the marriage and at the time of the divorce or separate maintenance or other marital action between the parties; (2) marital misconduct or fault of either or both parties, whether or not used as a basis for a divorce as such, if the misconduct affects or has affected the economic circumstances of the parties, or contributed to the breakup of the marriage; provided, that no evidence of personal conduct which would otherwise be relevant and material for purposes of this subsection shall be considered with regard to this subsection if such conduct shall have taken place subsequent to the happening of the earliest of (a) entry of a pendente lite order in a divorce or separate maintenance action; (b) formal signing of a written property or marital settlement agreement; or (c) entry of a permanent order of separate maintenance and support or of a permanent order approving a property or marital settlement agreement between the parties; (3) the value of the marital property, whether the property be within or without the State. The contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value of the marital property, including the contribution of the spouse as homemaker; provided, that the court shall consider the quality of the contribution as well as its factual existence; (4) the income of each spouse, the earning potential of each spouse, and the opportunity for future acquisition of capital assets; (5) the health, both physical and emotional, of each spouse; (6) the need of each spouse or either spouse for additional training or education in order to achieve that spousess income potential; (7) the nonmarital property of each spouse; (8) the existence or nonexistence of vested retirement benefits for each or either spouse; (9) whether separate maintenance or alimony has been awarded; (10) the desirability of awarding the family home as part of equitable distribution or the right to live therein for reasonable periods to the spouse having custody of any children; (11) the tax consequences to each or either party as a result of any particular form of equitable apportionment; (12) the existence and extent of any support obligations, from a prior marriage or for any other reason or reasons, of either party; (13) liens and any other encumbrances upon the marital property, which themselves must be equitably divided, or upon the separate property of either of the parties, and any other existing debts incurred by the parties or either of them during the course of the marriage; (14) child custody arrangements and obligations at the time of the entry of the order; and (15) such other relevant factors as the trial court shall expressly enumerate in its order.

S.C. Code Ann. § 20-7-472 (Supp. 2006).  
These criteria are intended to guide the family court in exercising its discretion over apportionment of the marital property.  Johnson, 296 S.C. at 297, 372 S.E.2d at 112.  They are only equities to be considered in reaching a fair distribution of marital property.  Id. at 297-98, 372 S.E.2d at 112.  
 
The ultimate goal of apportionment is both to divide the marital estate, as a whole, in a manner which fairly reflects each spouses contribution to the economic partnership and to have the relative effect of ending that partnership on each of the parties.  Johnson, 296 S.C. at 298, 372 S.E.2d at 112.
Awards such as the instant case have been previously upheld by this Court.  In Brandi v. Brandi, the marriage lasted ten years, the parties were approximately the same age, the husband was in better health, husbands adultery caused the breakup of the marriage, the husband demonstrated a greater earning capacity, the husband had far greater nonmarital assets, and he made most of the direct contributions to the acquisition of the marital property.  302 S.C. 353, 357, 396 S.E.2d 124, 126 (Ct. App. 1990).  The wifes contributions, on the other hand, were primarily indirect contributions as a homemaker.  Id.  The family court awarded the husband seventy percent of the marital property.  Id. at 356, 396 S.E.2d at 125.  This Court found the award to the wife was most liberal but was not an abuse of discretion.  Id. at 358, 396 S.E.2d at 127.  
 
Precedent supports similar divisions based on this States current equitable distribution regime.  See Wynn v. Wynn, 360 S.C. 117, 126, 600 S.E.2d 71, 75 (Ct. App. 2004) (modifying family courts order to include jointly incurred credit card debt but upholding the family courts award of fifty-five percent of the marital estate to the husband following nineteen-year marriage); Pool v. Pool, 321 S.C. 84, 88-89, 467 S.E.2d 753, 756 (Ct. App. 1996) (finding no abuse of discretion when family court awarded sixty percent of marital estate to the husband and forty percent to the wife, wherein marriage lasted three years, the husband made greater direct contributions to marriage, but both parties contributed equally in terms of indirect contributions);  Sharpe v. Sharpe, 307 S.C. 540, 542, 416 S.E.2d 215, 216 (Ct. App. 1992) (affirming a sixty-five percent division of the marital estate in favor of the husband when parties were married for eighteen years, the husband committed post-separation adultery, and wife conspired to kill husband post-separation); Cross v. Cross, 296 S.C. 474, 475, 374 S.E.2d 178, 178 (1988) (modifying family courts order for failure to offset the husbands tax payment but upholding its award of eighty-three percent of the marital assets to the wife when parties were married for nine years and the wife made significant non-marital contributions); Coxe v. Coxe, 294 S.C. 291, 294, 363 S.E.2d 906, 908 (Ct. App. 1987) (upholding an award of twenty-five percent of the marital estate to the wife in a marriage that lasted approximately eighteen years, and in which wife could not work outside the home due to a pre-marital disability); Josey v. Josey, 291 S.C. 26, 32, 351 S.E.2d 891, 895 (Ct. App. 1986) (affirming family courts award of sixty percent of marital estate to the husband and forty percent to the wife and finding despite husbands adultery, the award bore a reasonable relationship to the relative direct and indirect contributions of the parties); Watson v. Watson, 291 S.C. 13, 19-20, 351 S.E.2d 883, 887-88 (Ct. App. 1986) (upholding family courts award of thirty-two percent of marital estate to wife after a twenty-three year marriage in which the husbands earning potential was vastly superior to that of the wife); Millis v. Millis, 282 S.C. 610, 612-13, 320 S.E.2d 66, 67 (Ct. App. 1984) (finding no abuse of discretion in awarding the wife twenty percent of the marital estate after a fourteen-year marriage).
The equitable distribution of the marital estate is within the sound discretion of the family court, and its decision will not be disturbed on appeal absent an abuse of discretion.  Coxe, 294 S.C. at 295, 363 S.E.2d at 908.  Because family court judges are given broad jurisdiction in the equitable distribution of marital property, the family court may use any reasonable means to divide the estate equitably.  Id.  Accordingly, examining the overall contributions of the parties and the remaining equitable distribution factors, we find the family court did not abuse its discretion in making the distribution.  We specifically address some of Husbands and Wifes assertions of error below.[1]
B.  Personal Injury/Workers Compensation
Wife asserts the family court erred in apportioning all of Husbands proceeds from his workers compensation action to Husband because the cause of action occurred before the date of filing and the family court did not make sufficient findings for judicial review.  We disagree.
[P]roceeds of a personal injury settlement acquired during the marriage are marital property subject to the family courts jurisdiction.  Marsh v. Marsh, 313 S.C. 42, 46, 437 S.E.2d 34, 36 (1993).  However,

 recognition of the award or settlement as marital property does not mean the proceeds of the award must be divided and a portion awarded to the non-injured spouse.  To the contrary; the family court may, and in many cases probably should, award the proceeds entirely to the injured spouse.  We emphasize the family court is not required to divide all marital property between the spouses based on the same percentage of division.  For example, the court could divide the general marital property equally between the two but award the personal injury compensation entirely to the injured spouse.  
 

Id. at 45, 437 S.E.2d at 36 (citations omitted).  In this case, Husbands cause of action arose before the parties were married, and he suffered no symptoms during the marriage.  Further, he settled it after they separated.  Accordingly, we find the family court did not abuse its discretion in apportioning each partys award to them individually.
C.  Sale of Marital Home 
Wife maintains the family court erred in ordering the sale of the marital home instead of awarding the home to Husband because Husband was in possession of the home since the separation and the home likely decreased in value as a result of Husbands lack of maintenance.  We disagree.
To effect an equitable division of property, the family court may require the sale of the marital home.  Donahue v. Donahue, 299 S.C. 353, 360, 384 S.E.2d 741, 745 (1989).  Before ordering the sale of marital property, the court should first attempt to make an in-kind distribution of the marital assets.  Craig, 365 S.C. at 289, 617 S.E.2d at 361.
Husband and Wifes marital property, other than the marital home, totaled approximately $21,000.  Because the home was valued at $122,000, distributing the home in-kind would have been impossible as the remaining marital estate was inadequate to offset an in-kind award of the home to one spouse.  Accordingly, the family court did not abuse its discretion in ordering the sale of the marital home. 
 
D.  Special Equity
Husband argues the family court erred in awarding Wife a special equity of $35,000 in the home.  We disagree.
Although the house belonged to Wife prior to the marriage, neither party disputes that it is marital property.  Accordingly, this determination is the law of the case.  Dreher v. Dreher,370 S.C. 75, 78 n.1, 634 S.E.2d 646, 647 n.1 (2006).  
The family court awarded Wife a special equity of $35,000 in the home.  The family court did not specify why it was awarding Wife such equity, but presumably it was for the $35,000 of equity in the house that Wife brought into the marriage.  However, the family court improperly used this term as a spouse only acquires special equity in nonmarital property by contributing to improvements to that nonmarital property.  Johnson, 296 S.C. at 299, 372 S.E.2d at 113; see also S.C. Code Ann. § 20-7-473(5) (Supp. 2006).
While this award does not fit the definition of special equity, we find it was not an abuse of the family courts discretion to award Wife her premarital contribution towards the marital home.  Accordingly, we affirm the family courts award of $35,000 to Wife.
III.  Findings of Fact
Wife contends the family court erred in finding Wifes behavior brought Husband public embarrassment, financial strain, and worry that Husband would be implicated in the fraud because Husband took delight in Wifes legal troubles and the financial strain occurred prior to the separation.
The family court made this finding, but it also acknowledged Husband took some personal delight in Wifes misfortune.  Further, the family court found the money Wife obtained through her financial misdeeds was used for family luxuries, and while Husband may not have condoned it, he should have been more informed and involved with family finances.  Accordingly, we find Wife suffered no prejudice as a result of the family courts finding.
 
IV.  Attorneys Fees
Wife contends the family court erred in failing to award her attorneys fees but concedes she would only be entitled to them if this Court grants her any relief on appeal.  Husband contends the family court erred in failing to award him attorneys fees.  
 
The family court has discretion in deciding whether to award attorneys fees, and its decision will not be overturned absent an abuse of discretion.  Donahue, 299 S.C. at 365, 384 S.E.2d at 748.  An abuse of discretion occurs when the decision is controlled by an error of law or is based on factual findings that are without evidentiary support.  
Degenhart, 360 S.C. at 500, 602 S.E.2d at 97.  
Section 20-7-420(A)(38) of the South Carolina Code (Supp. 2006) authorizes the family court to award attorneys fees.  In deciding whether to award attorneys fees, the family court should consider: (1) each partys ability to pay his or her own fee; (2) the beneficial results obtained by the attorney; (3) the parties respective financial conditions; and (4) the effect of the fee on each partys standard of living.  E.D.M., 307 S.C. at 476-77, 415 S.E.2d at 816.  
Wifes beneficial results may change because of our decision to remand the determination of alimony, so the family court should reconsider the issue of whether to award Wife attorneys fees.  Peirson v. Calhoun, 308 S.C. 246, 255, 417 S.E.2d 604, 609 (Ct. App. 1992); see also Epperly v. Epperly, 312 S.C. 411, 416, 440 S.E.2d 884, 886-87 (1994) (As to the beneficial result obtained, it is clear that Wife did not prevail in the initial action. However, upon appeal, she has succeeded in part.  Therefore, this issue is remanded to the [f]amily [c]ourt for reconsideration.).  However, we find the family court did not err in failing to award Husband attorneys fees, considering Husbands financial situation is far superior to that of Wife and he has the ability to pay his own fees.
V.  Name Change
Wife maintains the family court erred in requiring the clerk of court to notify the State Law Enforcement Division (SLED) of Wifes resumption of her maiden name when such notification is not required by section 15-49-20(D) of the South Carolina Code (Supp. 2006).  We disagree.
Section 15-49-20(D) provides, If a petitioner is found to have a criminal record as indicated by the background check and the court grants the petition for a name change, the clerk of court must notify [SLED] of the petitioners new name.  The division must make the appropriate changes to the petitioner's criminal record.  However, section 15-49-20(J) provides,
 

 The provisions of this section do not apply to a person who wishes to resume her maiden name as a result of a domestic action filed in family court. A family court judge may authorize a name change for a person wishing to resume her maiden name in another order including, but not limited to, an order for separate support and maintenance or a final divorce decree.

Although the section does not require the family court to report Wifes name change to SLED, we find the family court did not abuse its discretion in doing so.  Wife was not changing her name in an attempt to avoid prosecution or enforcement, but she is a convicted felon.  Our research does not reveal any statute or case, nor does Wife point us to any, prohibiting the family court from reporting a name change in a situation similar to the present. 
 
CONCLUSION
Accordingly, the family courts order is 
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
STILWELL, SHORT, and WILLIAMS, JJ., concur.[2]

[1] Wife also contends the family court erred (1) in referencing the reasons for the disintegration of the marriage and in failing to make specific findings on Husbands contributions to the disintegration of the marriage; (2) in considering her financial misconduct because economic misconduct against a third person is not a factor to be considered in determining distribution of marital property; and (3) in apportioning the equity, taxes, and necessity of repairs of the home to both parties because Husband was in possession of the home and Wife received only $300 per month as an unspecified advance for the use of her interest in the home.
[2] We decide this case without oral argument pursuant to Rule 215, SCACR.